Home Furniture Company v. Commissioner.
Home Furniture Co. v. Commissioner
Docket No. 11147.
United States Tax Court
1947 Tax Ct. Memo LEXIS 122; 6 T.C.M. (CCH) 915; T.C.M. (RIA) 47225; July 31, 1947
*122 Meredith M. Daubin, Esq., 1111 Munsey Bldg., Washington, D.C., for the petitioner. Paul E. Waring, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined deficiencies of $1,738.16 and $392.07 in petitioner's income taxes for 1942 and 1943, respectively, and a deficiency of $6,275.99 and penalty of $1,569 in excess profits tax for 1942. Petitioner charges error in the Commissioner's failure to compute its excess profits tax credit for 1942 on the average income of the base period as prescribed by section 713, Internal Revenue Code, and respondent now concedes that petitioner is entitled to a credit so computed. Four other assigned errors in the determination of income and excess profits taxes for 1942 and 1943 were abandoned by petitioner at the hearing. By affirmative plea respondent contends that $24,400, representing cash and bonds transferred by Burks, Inc., to petitioner's sole shareholder should be added to petitioner's income for 1943, and prays that the deficiency determined for that year be accordingly increased. This is the only issue for decision. Findings of Fact *123 Petitioner, a District of Columbia corporation engaged in the retail furniture business at 1147 Seventh Street, N.W., Washington, D.C., prepared its income and excess profits tax returns for 1942 and 1943 on the cash basis, and filed them with the collector of internal revenue for the district of Maryland. It reported as income when collected-cash received from sales and from the collection of accounts receivable under sales contracts. Items of expense were posted on its books when paid, and all payments for merchandise purchased were deducted from gross income. All of petitioner's capital stock and all of the capital stock of R. E. Burks, Inc., another District of Columbia corporation engaged in the retail furniture business at 1101 Seventh Street, N.W., Washington, D.C., were owned by Mrs. Ethel Lee Burks, who acquired them by inheritance from her husband after his death in 1937. Mrs. Burks was without commercial experience and while she signed the checks of both firms and was furnished with weekly reports on their business, she relied on employed managers and her attorney for guidance and business decisions. After the war began Mrs. Burks experienced difficulty in procuring the *124 services of a manager and good account collectors for petitioner. As a result, on January 5, 1943, petitioner as vendor and Burks, Inc., as vendee, entered into a contract which reads as follows: "The Vendor sells, assigns and transfers to the Vendee all of its right, title and interest in and to its book accounts receivable, and/or rental agreement contracts, including any furniture or property delivered to customers in connection with the accounts or contracts and now in possession of Vendor's customers or others, to which Vendor has any rights of ownership or repossession, totaling in all on January 1, 1943, to approximately 1300 accounts with outstanding balances receivable of $46,927.85, which accounts are considered Good and collectible
$31,396.08
Bad and doubtful
15,531.77
Total
$46,927.85
"The Vendee agrees to assume all expenses of collections, including court costs and attorney's fees, and to pay to Vendor in full payment for all accounts receivable balances and/or balances due on rental agreement contracts, and all rights of ownership or repossession in the furniture delivered to customers in connection with the accounts or contracts, an amount equal *125 to forty-three per cent (43%) of the total collections, except as hereinafter limited. "Vendee shall make settlement with Vendor semi-annually, and the semi-annual payments shall not be in excess of $1,500.00, and the total amount to be paid by Vendee to Vendor under this contract shall not be in excess of $13,400." On the same date petitioner and Burks, Inc., made a second contract, whereby: "The Vendor sells and transfers to Vendee all its rights, title and interest in and to all the new and used household furniture of every kind and description now owned by Vendor, wherever it may be, particularly all the new and used household furniture now on display or stored on its premises at 1145 Seventh Street, N.W., Washington, D.C., which has a book cost on Vendor's books of Fifteen thousand dollars ($15,000). "Vendee agrees to accept this furniture "as is" and to pay to Vendor in full payment for all the furniture the sum of Fifteen thousand dollars ($15,000.00) in semi-annual instalments of Twenty-five hundred dollars ($2,500.00)." The $15,000 cost of the furniture has been deducted by petitioner as an expense on its income tax returns for the respective years of purchase. *126 At a special stockholders' meeting, on October 9, 1943, it was resolved that petitioner sell all of its properties, "including all accounts receivable" to Mrs. Burks for one dollar "and other good and valuable consideration", and that Meredith M. Daubin be appointed attorney-in-fact "to effectuate the intent of this body without further acts of this body." On the same date the attorney-in-fact signed an instrument whereby petitioner purported to sell and convey its properties to Mrs. Burks, and a notice was addressed to the Recorder of Deeds of the District of Columbia, advising that the sale had been made; that Mrs. Burks assumed petitioner's obligations, if any, and that the object of the sale was that petitioner should "forthwith cease to exist." On October 11, 1943, petitioner was dissolved; its assets were taken by Mrs. Burks, and its records were moved to the office of Burks, Inc.
During the period January 5 to October 11, 1943, Burks, Inc., collected $23,352.50 of the accounts receivable of $46,927.85, mentioned in the first instrument of January 5, 1943, and by the end of the year had collected $24,860.28. In July, 1943, it paid to petitioner $4,000, of which $1,500 was *127 on account of the recited purchase price of the accounts receivable and $2,500 on account of the furniture. On December 15, 1943, Burks, Inc., paid to Mrs. Burks by check which she signed as its treasurer, $4,400, and during the same month Burks, Inc., transferred to her two bonds of the United States Government, each in the amount of $10,000, which bonds it had acquired at a cost of $20,000. Opinion On its tax return for 1943 petitioner did not include in taxable income cash of $4,400 and $20,000 representing the bonds, and respondent now argues that these amounts should be so included because the sale contracts were lacking in substance and receipt of the $24,400, actually paid to Mrs. Burks, should be imputed and taxed to petitioner as income which it sought by the instruments to channel to another. The contracts' terms are patently not such as would be offered by a seller seeking his best advantage. A recovery of $13,400 on accounts aggregating $46,927.85 cannot be commercially justified, especially since $31,396.08 of such accounts were deemed "good and collectible." The sale of furniture at "book cost" likewise connotes a transaction of convenience. And the arrangement *128 whereby the purchaser was to make relatively small semi-annual payments colors the entire arrangement as a taxsaving device, without a genuine business purpose. See Gregory v. Helvering, 293 U.S. 465. On the witness stand Mrs. Burks disclosed no familiarity with the contracts' terms. The originals could not be located, and she could not even recall whether or not she had signed them on behalf of both corporations, or who had prepared them. She guessed "the managers got together" and added later: "I haven't any idea why they reached any of these terms. My idea is to let some one else run the business. I have paid advisers and the only thing I have ever done is to sign the checks so I cannot tell you anything about the running of the business." The inference is inescapable that the contracts were designed for the avoidance of taxes and were lacking in substance. This latter view is confirmed by the parties' failure to adhere to the letter of their provisions. In July 1943 Burks, Inc., gave to petitioner its check for $4,000 covering the two semi-annual payments of $2,500 and $1,500, respectively, and on December 15, 1943, Burks, Inc., gave to Mrs. Burks an additional *129 check for $4,400 and transferred to her two United States Government bonds of a face value of $10,000 each, or a total of $24,400. The witness could not explain this payment and transfer, but as Burks, Inc., had collected $24,860.28 on the accounts receivable by the end of the year, we infer and hold that a settlement for collections was intended. We note further that on October 9, 1943, or two days before petitioner's dissolution, it was resolved by the "stockholders" that petitioner sell all of its assets to Mrs. Burks for one dollar and "other good and valuable consideration." On the same date petitioner's attorney-in-fact executed a bill of sale. A corporation may not escape tax on income by ostensible sales or distributions to shareholders, Commissioner v. Court Holding Co., 324 U.S. 331, and this is a fortiori true if, as here, the recited price and terms of payment are at gross variance with normal commercial practice, and if the stipulated conditions are ignored by the parties themselves. As Mrs. Burks was the sole shareholder of both corporations, transactions between them and between them and her invite close scrutiny, and the facts here disclosed do not meet *130 the tests applied to dealings between persons or entities in intimate relation. Lusthaus v. Commissioner, 327 U.S. 293; Helvering v. Horst, 311 U.S. 112; Helvering v. Clifford, 309 U.S. 331; Higgins v. Smith, 308 U.S. 473. Decision will be entered under Rule 50.