**FIRST NAT. BANK OF ST. ELMO, ILL. v. UNITED STATES.**

Civ. No. 1408.

United States District Court
E. D. Illinois.

Feb. 5, 1951.

26

Spaulding F. Glass, Chicago, Ill., and Leigh M. Kagy, East St. Louis, Ill., for plaintiff.

William W. Hart, U. S. Atty. and Ernest R. McHale, Asst. U. S. Atty., East St. Louis, Ill., for defendant.

WHAM, Chief Judge.

Deficiencies. in plaintiff's income and excess profits taxes for the year 1941, asserted by the Commissioner on October 26, 1944, were paid with interest on October 31, 1944, and claims for refund filed on March 19, 1945. The claims for refund were disallowed and rejected by the Commissioner by letter dated September 11, 1946, received by plaintiff on September 13, 1946. On November 16, 1946, within the time permitted by law, plaintiff filed the present action seeking to recover the amounts paid by it to cover said alleged deficiencies, together with interest thereon.

Plaintiff has been in liquidation since January 12, 1944. However, at the times involved here plaintiff was an operating bank and the liquidation proceedings are not involved in the tax controversy.

The facts in the case have been stipulated by the parties and the pertinent instruments have been agreed upon and attached to and made a part of the stipulation of facts. From the stipulation and documents attached the following appears: Plaintiff is a corporation duly organized and existing under the laws of the United States and, at the times in question, was engaged in the business of commercial banking at St. Elmo, Illinois. On July 28, 1934, plaintiff acquired title to an eighty acre tract of land in Fayette County, Illinois, from Anthony and Lucy Koeberlein at. a Master's foreclosure sale held to satisfy a judgment against the property held by plaintiff. On August 26, 1936, through its President and Cashier, plaintiff executed two instruments affecting said land: (1) An oil and gas lease to J. C. Good, representing C. R. Bennett, reserving, however, to plaintiff a one-eighth royalty interest in the oil and gas that might subsequently be produced, and, (2) a mineral deed conveying to said C. R. Bennett one-half of the one-eighth royalty interest so reserved by plaintiff. Oil wells were subsequently drilled on said land and Sohio Corporation became the purchaser of the oil produced therefrom until September, 1940, after which the oil was purchased by Cities Service Oil Company. Sohio Corporation paid royalty on said one-eighth royalty interest, one-sixteenth to plaintiff and one-sixteenth to Bennett, until July 1, 1939. At that time the Koeberleins, the former owners of the land, instituted suit against plaintiff, J. C. Good, C. R. Bennett and F. P. Mabee to set aside the foreclosure decree and sale and re-establish themselves as owners. Plaintiff filed a counterclaim in said action against Bennett, involving the lease, an overriding royalty interest and the one-sixteenth royalty interest above mentioned. Sohio Corporation impounded all royalty payments involved in litigation pending determination of title. The Circuit Court of Fayette County, Illinois, entered its decree on August 9, 1940, holding the foreclosure proceedings valid and that as between the Koeberleins and plaintiff, title to the eighty acres of land was in the plaintiff. This decree was affirmed by the Supreme Court of Illinois on April 10, 1941.

A compromise settlement between plaintiff and Bennett on plaintiff's counterclaim was entered into on September 29, 1941, and, on the same day, pursuant to its terms, the settlement agreement was ratified by plaintiff's Board of Directors at a special meeting, and a decree of the Circuit Court of Fayette County, Illinois, was entered in conformity therewith. The settlement agreement, omitting signatures, read as follows:

"State of Illinois } SS
County of Fayette }

In The Circuit Court

Anthony Koeberlein et al.,
 Plaintiffs,

 v.

The First National Bank of St. Elmo, Illinois, a Corporation, et al.,
 Defendants.

In Chancery
No. 39–1071

"Agreement of Settlement

"It is hereby stipulated and agreed by and between the First National Bank of St. Elmo, Illinois, a Corporation, Plaintiff in its Counter-claim in the above cause, and C. R. Bennett, Defendant in said Counter-claim, that for and in consideration of the mutual covenants and promises of the parties hereto, it is stipulated and agreed as follows:

"1. That the said C. R. Bennett shall execute such instruments as are necessary for the payment by the Sohio Corporation the amount of Eighteen Thousand Dollars ($18,000.00) to the First National Bank of St. Elmo, Illinois, out of the moneys otherwise payable to C. R. Bennett for overriding royalty for oil produced from the land described in said Counter-claim.

"2. That by agreement of the parties, a decree shall be entered in said cause on said Counter-claim, showing all claims of The First National Bank of St. Elmo, Illinois, in the oil and gas lease and mineral deed mentioned in said Counter-claim have been settled by the parties, out of Court, and that the title of the said C. R. Bennett in and under said mineral deed mentioned in said Counter-claim and all of his interest claimed by him in the Answer filed in said Counter-claim in the oil and gas lease on the land herein described shall be confirmed by the Court in accordance with decree of the Court prepared herewith.

"3. The First National Bank of St. Elmo, Illinois, a Corporation, agrees to execute such instruments as may be necessary to enable the said C. R. Bennett to receive from any oil company heretofore receiving oil from the lands described in the Counter-claim, all moneys claimed by him under said mineral deed and oil leases mentioned in said Counter-claim, after the payment of said Eighteen Thousand Dollars ($18,000.00) above mentioned, to The First National Bank of St. Elmo, Illinois.

"4. That this contract shall be ratified by a special meeting of the Board of Directors of The First National Bank of St. Elmo, Illinois, and said suit dismissed forthwith after such ratification.

"In Witness Whereof, First Party has caused these presents to be executed by its duly authorized officers and its Corporate Seal to be affixed, and Second Party has affixed his hand and seal this 29th day of September, 1941."

The decree of the Circuit Court of Fayette County, omitting the title of the case and the signature of the judge, was as follows:

"And now, on this 29th day of September, A. D. 1941, comes the First National Bank of St. Elmo, Illinois, a Corporation, Plaintiff in its Counter-Claim, by its Attorneys, and C. R. Bennett, Defendant in said Counter-claim, by his Attorneys, and the cause coming on for hearing in open Court upon Counts I and II of the Counter-claim as amended, and the Answer of C. R. Bennett thereto, and the rejoinder to said Answer, and by agreement of all parties in open Court,

"It Is Ordered, Adjudged and Decreed by the Court that in pursuance of a written contract of settlement between the parties hereto, entered into out of Court, and the payment to the First National Bank of St. Elmo, Illinois of the amount agreed upon in said settlement, that the undivided one-half (½) interest in and to all of the oil and gas in and under the land described in Count I of said Counter-claim be, and the same is hereby confirmed in C. R. Bennett, and said mineral deed to C. R. Bennett, mentioned in said Counter-claim, and recorded in Book 296 at Page 224 of the records of Fayette County, Illinois, be, and the same is hereby confirmed as a good and valid mineral deed for all the rights therein granted to the said C. R. Bennett, as set forth in said mineral deed; and that the oil and gas lease mentioned in Count II of said Counter-claim from the First National Bank of St. Elmo, Illinois to J. C. Good, and recorded in Book 289 at Page 260 of the records of said County, and the assignment of said lease by said J. C. Good to C. R. Bennett to J. F. Mabee, recorded in Book 309 at page 316 of the records of said County, be, and same are hereby confirmed as a good and valid lease, and good and valid assignments thereof,

and that the said J. E. Mabee is now the lawful holder of said lease and all rights therein, as conveyed to him by said assignment from the said C. R. Bennett, subject to the payment by the said J. E. Mabee to the said C. R. Bennett of the overriding royalty and other terms and conditions as specifically set forth in said assignment of said lease, as the same now appears of record, and that the First National Bank of St. Elmo, Illinois, has no right, title or interest of any kind· or character in and to said mineral deed aforesaid, or said oil and gas lease aforesaid, or in any moneys heretofore received by the said C. R. Bennett by virtue of his claim under said mineral deed and said oil and gas lease and the assignment thereof."

On October 7, 1941, plaintiff's Board of Directors met and passed two resolutions providing for the payments of certain dividends in kind to plaintiff's stockholders of record at the close of business on October 8, 1941, in proportion to their respective holdings of shares of record at the close of business on that day. One of the resolutions provided for the payment of a dividend in kind consisting of all plaintiff's right, title and interest in and to the oil, gas and other minerals in the eighty acre tract, with the right to receive all proceeds arising from any sales subsequent to September 30, 1941. The other resolution provided for a dividend in kind consisting of any rights which plaintiff then had or might thereafter acquire by virtue of the terms of said settlement agreement with C. R. Bennett on plaintiff's said counterclaim. At the same meeting, for the declared purpose of accomplishing the payment of the above dividends, the plaintiff's Board of Directors authorized and directed plaintiff's officers to execute and deliver a quitclaim deed to its interest in the eighty acres, an assignment of its rights under the said Agreement of Settlement and a trust indenture, presented at the meeting, which designated C. M.. Koeberlein as trustee for the stockholders.

Pursuant to the aforesaid resolutions plaintiff by quitclaim deed, executed October 8, 1941, conveyed and quitclaimed to C. M. Koeberlein, trutee, for the use and benefit of plaintiff's shareholders in accordance with the provisions of the trust indenture, all plaintiff's right, title and interest in and to the oil, gas and other minerals in the eighty acre tract, with the right to receive all proceeds arising from any sales of oil subsequent to September 30, 1941.

By the assignment, also executed on October 8, 1941, plaintiff assigned to C. M. Koeberlein, trustee, for the use and benefit of plaintiff's shareholders in accordance with the provisions of the trust indenture, all plaintiff's rights existing by virtue of said Agreement of Settlement "which have now accrued or may hereafter accrue by virtue of such agreement", and covenanted to execute and deliver whatever further instruments might be necessary to enable the assignee to enjoy the benefits of the assignment, and to perform and discharge all duties and obligations assumed by it under the terms of the Agreement of Settlement.

The trust indenture, executed October 8, 1941, set up an irrevocable trust in the aforementioned property and rights, with C. M. Koeberlein as trustee with designated powers of administration and execution for the benefit of the stockholders. As to the assigned rights in said Agreement of Settlement the indenture imposed on the trustee the duty to retain said property and to liquidate it into cash, and upon said liquidation to distribute it to plaintiff's shareholders of record at the close of business on October 8, 1941, as soon as practicable but in no event later than twenty years from the date of the trust agreement.

On November 6, 1941, in payment of the agreed consideration provided in the settlement agreement, C. R. Bennett executed a transfer order to the Sohio Corporation, transferring to C. M. Koeberlein, trustee, his overriding royalty interest to the oil produced from the eighty acre tract from July 1, 1939, to remain in effect until C. M. Koeberlein, trustee, had received the sum of $18,000.00, at which time the overriding royalty interest was to revert to C. R. Bennett. This transfer order was received by the Sohio Corporation on De-

cember 5, 1941, and it paid the $18,000.00 provided for to Koeberlein, trustee, on or about December 10, 1941. Distribution of this amount on a pro rata basis to plaintiff's shareholders of record at the close of business on October 8, 1941, was made by Koeberlein, trustee, on December 18, 1941.

On December 1, 1941, said trustee made and delivered to each of plaintiff's shareholders of record at the close of business on October 8, 1941, a mineral deed covering his fractional share in the property conveyed to the trust by the plaintiff's quitclaim mineral deed of October 8, 1941. For oil purchased from the eighty acres in the month of October, 1941, there became payable by the purchasing oil company $529.66 on the one-sixteenth royalty interest originally held by plaintiff and transferred to Koeberlein, as trustee, by the quitclaim mineral deed of October 8, 1941.

In making its federal income and excess profits tax returns for the year 1941, plaintiff, which at all times material had made returns on the cash receipts and disbursements basis, did not include in said returns any part of the $18,000.00 paid by Sohio on the order of Bennett to C. M. Koeberlein, trustee, or on any portion of the $529.66 paid by the purchasing oil company for the one-sixteenth royalty interest for oil purchased during the month of October, 1941.

The deficiency which was assessed by the Commissioner and paid by plaintiff, and for which plaintiff now seeks refund, is explained from the Commissioner's point of view in the statement entitled "Explanation of Adjustments" inclosed with his letter to the plaintiff of October 26, 1944, which, with inclosures, is made Exhibit "L" to the Stipulation of Facts. The statement reads as follows:

"Inasmuch as your records disclose that the agreed amount of $18,000.00 covered the ratification of a mineral deed for 2/32nds of the oil and gas in place and the lease for 7/32nds of the oil and gas in place, two-ninths of the amount, of $4,-000.00 has been allocated to the ratification of the mineral deed and represents a sale of capital assets. The remaining $14,-000.00 has been allocated to the ratification of the oil lease and is subject to percentage depletion of 27½%. Taxable income from the transaction in question has, therefore, been computed as follows:

| "Sale of capital assets | $ 4,000.00 |
| Royalty income | 14,000.00 |
| | $18,000.00 |
| Cost of property sold None | |
| Depletion at 27½% on $14,000.00 $3,850.00 | 3,850.00 |
| Income from oil and gas properties | $14,150.00 |

"(b) Oil royalties in the amount of $136.-69, less depletion of $37.59, as disclosed by your records and omitted from your return, has been included in income."

It will be noted from the foregoing statement that included by the Commissioner with other taxable income to plaintiff for the year 1941 was the sum of $136.39, representing the portion of the $529.66 paid by the purchasing oil company on the one-sixteenth royalty interest for the month of October, 1941, prorated to the first eight days of that month. Plaintiff's claim of a right to a refund of the taxes assessed against this item will be considered later as presenting a problem different from that presented by the $18,000.00 received in the settlement.

Whether plaintiff, by the court-confirmed settlement agreement under which $18,-000.00 was to be paid to plaintiff but which, by reason of plaintiff's subsequent assignment of its property rights therein as a dividend in kind to C. M. Koeberlein, trustee, as trustee for the shareholders, as aforesaid, was actually paid to him, realized income under section 22 of the Revenue Code, 26 U.S.C.A. § 22, is the vital question. As shown in his communication to plaintiff above quoted the Commissioner viewed the execution of the settlement agreement and its confirmation by decree of court on September 29, 1941 as the determinative factor. Plaintiff contends that because the cash had not been and was not received in satisfaction of the agreement to pay at the time the agreement was execut-

ed and confirmed by the decree and because its payment was left by the agreement subject to acts of other parties not controlled by plaintiff to be performed at a time in the future left indefinite by the agreement, it had not become and was not realized income at the time the agreement was executed and was confirmed by the decree; that the right to such payment in the future under the agreement constituted an assignable property in the hands of the bank which, if assigned, would carry with it the possibility of income to be realized by the assignee of the property, when actually paid to the assignee; and that such property having been assigned by the bank to the trustee for its shareholders who sometime later received the agreed payment the bank at no time realized any income therefrom.

The law permitted the bank to pay dividends in kind to its stockholders so that the income thereafter derived from such property by the stockholders would not belong to the bank or be chargeable to it as income realized by it. The quitclaim mineral deed conveying its mineral rights in the eighty acres to the trustee for the stockholders was such lawful transaction and carried with the property the right to the subsequent income therefrom. Though the income from the property in form of oil royalties would in normal course be paid to the bank only at the end of the month for the entire month's run, nevertheless, the royalties accumulated prior to the conveyance must, for income tax purposes, be considered income realized by the bank. Such accumulated royalties, in legal effect, belonged to the bank. It could retain or dispose thereof as it saw fit. Though not yet collected they were there to be collected at a proper time. They were realized income of the bank. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75. The inclusion of the amount of $136.69, less depletion of $37.59, as income of the bank realized from the royalties from the mineral estate conveyed by the bank's mineral deed of October 8, 1941 during the days in October, 1941 before the deed was executed, was lawful.

A study of the facts shown by the stipulation and attached exhibits with the inferences which seem reasonably to arise therefrom has led me to the conclusion that the bank did realize taxable income through the settlement agreement and the eventual payment of the $18,000.00 in cash and should have made return thereof for its taxable year 1941. The transaction appears to have been, in effect, a sale by the bank to C. R. Bennett of its property rights asserted in its counterclaim, though disputed by Bennett, in the oil property and royalties held by Bennett. The sale was consummated when the decree was entered pursuant to the terms of the agreement. The consideration to Bennett for his agreement to pay plaintiff the sum of $18,000.00 by transfer of impounded oil royalties, was paid by the entry of the decree confirming in Bennett the titles and interests claimed by him free of any claim by the bank. Only the actual payment in cash of the $18,000.00 agreed to be paid to the bank remained to be accomplished. The decree was made "in pursuance of a written contract of settlement between the parties hereto, entered into out of court, and the payment to the First National Bank of St. Elmo, Illinois of the amount agreed upon in said settlement". Obviously, the court looked upon the payment as already made and the parties looked upon it with certainty that it would be paid pursuant to the agreement. Otherwise, why did the bank agree to have its rights under its counterclaim cut off by decree. Can it be assumed that it was, with knowledge, merely buying another lawsuit? Time of payment having been left unfixed the import of the agreement was that the payment was due and should be paid immediately by the Sohio Corporation through necessary instruments agreed to be executed by C. R. Bennett out of "moneys otherwise payable to C. R. Bennett for overriding royalty for oil produced from the land described in said counterclaim". Said language, "overriding royalty for oil produced", clearly meant that the royalties were already in the hands of Sohio Corporation ready to be paid when properly authorized by the instru-

ments to be executed by C. R. Bennett. The only instrument required from Bennett was a simple transfer order which he could, for all that appears, have supplied immediately and which he did supply under date of November 6, 1941. It is noted that though the transfer was executed on November 6, 1941 it was not received by Sohio Corporation until December 5, 1941, nearly a month later. Seemingly, there was no anxiety about receiving the payment.

The agreement between the parties so nearly accomplished with only the consideration to be paid and such payment so arranged as to be a practical certainty, though the agreement related to property, was not in itself such property as would carry with its assignment a divorcement of the bank for tax purposes from the income resulting from the agreement. Such a result would clearly fall within the condemnation of the language of the court in Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 708, 89 L.Ed. 981: "To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress."

Though the facts in the case before the court are much more favorable to the Government than were the facts in the Court Holding Company case, supra, that case is more like the case here than is United States v. Cumberland Public Service Company, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251, cited by the plaintiff. Both cases involve sales of property. The former, as in the case here, was a transaction, poorly disguised, to escape taxation, while the latter, though the course it took was determined by the refusal of the corporation to make a sale that would subject it to capital gain taxes, involved a conveyance of property to the stockholders that was part of a genuine liquidation of the corporation and the sale of such property by the stockholders would not have been made by the corporation. In the case before this court the sale of its property had been accomplished by the bank before the assignment to the trustee for its stockholders and all

that remained for him to do was for him to receive the sale price in cash and distribute it to the stockholders.

Plaintiff's earnest contention that under its cash and disbursement system it could not realize taxable income unless actually received in cash or property, though sound as a principle under ordinary circumstances, cannot be sustained here for the reasons well stated in Helvering v. Horst, supra, wherein the court said that the power to dispose of income is the equivalent of ownership of it. The plaintiff had the power here to dispose of its income and did so by turning over to the trustee for its stockholders its right to receive and retain the consideration for its completed sale of corporate assets then payable to and collectible by it.

Plaintiff's complaint about double taxation, though appealing, cannot, under the law, be given weight in determining the issues that are before this court.

The requirement of the banking laws, Section 5137, U.S.R.S., 12 U.S.C.A. § 29, that real estate acquired in satisfaction of debts be not held more than five years is without effect in determining whether the bank realized taxable income in disposing of the property. Plaintiff's argument that its assignment of the settlement agreement before consideration actually paid should be considered as a good faith attempt to comply with the banking laws and given weight in support of plaintiff's contention that it did not realize taxable income from the transaction is neither plausible nor sustainable in view of all the facts shown by the stipulation.

Plaintiff is not entitled to a refund of the taxes assessed on its income realized, as aforesaid, under said settlement agreement or that realized from the royalties with which it was credited during the days of October, 1941 before the date of its mineral deed to the trustee for the stockholders.

Defendant's statement attached as an exhibit to the stipulation of facts appears to negative the right of the defendant to collect from plaintiff excess profits tax for the year 1941. Plaintiff is entitled to recover

the amount of $49.98 assessed against it as excess profits tax, with interest.

The stipulation of facts between the parties filed herein are adopted by the court as its findings and together with this opinion may stand as the formal findings and conclusions of the court. Judgment order may be presented by counsel for the Government on notice.