## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* HORST.

No. 27. Argued October 25, 1940.—Decided November 25, 1940.

*Mr. Arnold Raum,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Morton K. Rothschild* were on the brief, for petitioner.

*Mr. Selden Bacon,* with whom *Mr. Harry H. Wiggins* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The sole question for decision is whether the gift, during the donor's taxable year, of interest coupons detached from the bonds, delivered to the donee and later in the year paid at maturity, is the realization of income taxable to the donor.

In 1934 and 1935 respondent, the owner of negotiable bonds, detached from them negotiable interest coupons shortly before their due date and delivered them as a gift to his son who in the same year collected them at maturity. The Commissioner ruled that under the applicable § 22 of the Revenue Act of 1934, 48 Stat. 680, 686, the interest payments were taxable, in the years when paid, to the respondent donor who reported his income on the cash receipts basis. The Circuit Court of Appeals reversed the order of the Board of Tax Appeals sustaining the tax. 107 F. 2d 906; 39 B. T. A. 757. We granted certiorari, 309 U. S. 650, because of the importance of the question in the administration of the revenue laws and because of an asserted conflict in principle of the decision below with that of *Lucas* v. *Earl,* 281 U. S. 111, and with that of decisions by other circuit courts of appeals. See *Bishop* v. *Commissioner,* 54 F. 2d 298; *Dickey* v. *Burnet,* 56 F. 2d 917, 921; *Van Meter* v. *Commissioner,* 61 F. 2d 817.

The court below thought that as the consideration for the coupons had passed to the obligor, the donor had, by the gift, parted with all control over them and their payment, and for that reason the case was distinguishable

from *Lucas* v. *Earl, supra,* and *Burnet* v. *Leininger,* 285 U. S. 136, where the assignment of compensation for services had preceded the rendition of the services, and where the income was held taxable to the donor.

The holder of a coupon bond is the owner of two independent and separable kinds of right. One is the right to demand and receive at maturity the principal amount of the bond representing capital investment. The other is the right to demand and receive interim payments of interest on the investment in the amounts and on the dates specified by the coupons. Together they are an obligation to pay principal and interest given in exchange for money or property which was presumably the consideration for the obligation of the bond. Here respondent, as owner of the bonds, had acquired the legal right to demand payment at maturity of the interest specified by the coupons and the power to command its payment to others, which constituted an economic gain to him.

Admittedly not all economic gain of the taxpayer is taxable income. From the beginning the revenue laws have been interpreted as defining "realization" of income as the taxable event, rather than the acquisition of the right to receive it. And "realization" is not deemed to occur until the income is paid. But the decisions and regulations have consistently recognized that receipt in cash or property is not the only characteristic of realization of income to a taxpayer on the cash receipts basis. Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him. *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716; *Corliss* v. *Bowers,* 281 U. S. 376, 378. Cf. *Burnet* v. *Wells,* 289 U. S. 670.

In the ordinary case the taxpayer who acquires the right to receive income is taxed when he receives it, regardless of the time when his right to receive payment

accrued. But the rule that income is not taxable until realized has never been taken to mean that the tax- payer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not Himself received payment of it from his obligor. The rule, founded on administrative conveni- ence, is only one of postponement of the tax to the final event of enjoyment of the income, usually the receipt of it by the taxpayer, and not one of exemption from taxa- tion where the enjoyment is consummated by some event other than the taxpayer's personal receipt of money or property. Cf. *Aluminum Castings Co.* v. *Routzahn,* 282 U. S. 92, 98. This may occur when he has made such use or disposition of his power to receive or control the in- come as to procure in its place other satisfactions which are of economic worth. The question here is, whether because one who in fact receives payment for services or interest payments is taxable only on his receipt of the payments, he can escape all tax by giving away his right to income in advance of payment. If the taxpayer pro- cures payment directly to his creditors of the items of interest or earnings due him, see *Old Colony Trust Co.* v. *Commissioner, supra; Bowers* v. *Kerbaugh-Empire Co.,* 271 U. S. 170; *United States* v. *Kirby Lumber Co.,* 284 U. S. 1, or if he sets up a revocable trust with income payable to the objects of his bounty, §§ 166, 167, Reve- nue Act of 1934, *Corliss* v. *Bowers, supra;* cf. *Dickey* v. *Burnet,* 56 F. 2d 917, 921, he does not escape taxation because he did not actually receive the money. Cf. *Doug- las* v. *Willcuts,* 296 U. S. 1; *Helvering* v. *Clifford,* 309 U. S. 331.

Underlying the reasoning in these cases is the thought that income is "realized" by the assignor because he,, who owns or controls the source of the income, also controls the disposition of that which he could have

received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants. The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. Cf. *Burnet* v. *Wells, supra.*

Although the donor here, by the transfer of the coupons, has precluded any possibility of his collecting them himself, he has nevertheless, by his act, procured payment of the interest as a valuable gift to a member of his family. Such a use of his economic gain, the right to receive income, to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such non-material satisfactions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son. Even though he never receives the money, he derives money's worth from the disposition of the coupons which he has used as money or money's worth in the procuring of a satisfaction which is procurable only by the expenditure of money or money's worth. The enjoyment of the economic benefit accruing to him by virtue of his acquisition of the coupons is realized as completely as it would have been if he had collected the interest in dollars and expended them for any of the purposes named. *Burnet* v. *Wells, supra.*

In a real sense he has enjoyed compensation for money loaned or services rendered, and not any the less so because it is his only reward for them. To say that one who has made a gift thus derived from interest or earnings paid to his donee has never enjoyed or realized the fruits of his investment or labor, because he has assigned

them instead of collecting them himself and then paying them over to the donee, is to affront common understanding and to deny the facts of common experience. Common understanding and experience are the touchstones for the interpretation of the revenue laws.

The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it. We have had no difficulty in applying that proposition where the assignment preceded the rendition of the services, *Lucas* v. *Earl, supra; Burnet* v. *Leininger, supra,* for it was recognized in the *Leininger* case that in such a case the rendition of the service by the assignor was the means by which the income was controlled by the donor and of making his assignment effective. But it is the assignment by which the disposition of income is controlled when the service precedes the assignment, and in both cases it is the exercise of the power of disposition of the interest or compensation, with the resulting payment to the donee, which is the enjoyment by the donor of income derived from them.

This was emphasized in *Blair* v. *Commissioner,* 300 U. S. 5, on which respondent relies, where the distinction was taken between a gift of income derived from an obligation to pay compensation and a gift of income-producing property. In the circumstances of that case, the right to income from the trust property was thought to be so identified with the equitable ownership of the property, from which alone the beneficiary derived his right to receive the income and his power to command disposition of it, that a gift of the income by the beneficiary became effective only as a gift of his ownership of the property producing it. Since the gift was deemed to be a gift of the property, the income from it was held to be the income of the owner of the property,

who was the donee, not the donor—a refinement which was unnecessary if respondent's contention here is right, but one clearly inapplicable to gifts of interest or wages. Unlike income thus derived from an obligation to pay interest or compensation, the income of the trust was regarded as no more the income of the donor than would be the rent from a lease or a crop raised on a farm after the leasehold or the farm had been given away. *Blair* v. *Commissioner, supra,* 12, 13 and cases cited. See also *Reinecke* v. *Smith,* 289 U. S. 172, 177. We have held without deviation that where the donor retains control of the trust property the income is taxable to him although paid to the donee. *Corliss* v. *Bowers, supra.* Cf. *Helvering* v. *Clifford, supra.*

The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid. See, *Corliss* v. *Bowers, supra,* 378; *Burnet* v. *Guggenheim,* 288 U. S. 280, 283. The tax laid by the 1934 Revenue Act upon income "derived from . . . wages, or compensation for personal service, of whatever kind and in whatever form paid, . . .; also from interest . . ." therefore cannot fairly be interpreted as not applying to income derived from interest or compensation when he who is entitled to receive it makes use of his power to dispose of it in procuring satisfactions which he would otherwise procure only by the use of the money when received.

It is the statute which taxes the income to the donor although paid to his donee. *Lucas* v. *Earl, supra; Burnet* v. *Leininger, supra.* True, in those cases the service which created the right to income followed the assignment, and it was arguable that in point of legal theory the right to the compensation vested instantaneously in the assignor when paid, although he never received it; while here the right of the assignor to receive the income

antedated the assignment which transferred the right and thus precluded such an instantaneous vesting. But the statute affords no basis for such "attenuated subtleties." The distinction was explicitly rejected as the basis of decision in *Lucas* v. *Earl*. It should be rejected here; for no more than in the *Earl* case can the purpose of the statute to tax the income to him who earns, or creates and enjoys it be escaped by "anticipatory arrangements however skilfully devised" to prevent the income from vesting even for a second in the donor.

Nor is it perceived that there is any adequate basis for distinguishing between the gift of interest coupons here and a gift of salary or commissions. The owner of a negotiable bond and of the investment which it represents, if not the lender, stands in the place of the lender. When, by the gift of the coupons, he has separated his right to interest payments from his investment and procured the payment of the interest to his donee, he has enjoyed the economic benefits of the income in the same manner and to the same extent as though the transfer were of earnings, and in both cases the import of the statute is that the fruit is not to be attributed to a different tree from that on which it grew. See *Lucas* v. *Earl, supra,* 115.

*Reversed.*

The separate opinion of Mr. Justice McReynolds.

The facts were stipulated. In the opinion of the court below the issues are thus adequately stated—

"The petitioner owned a number of coupon bonds. The coupons represented the interest on the bonds and were payable to bearer. In 1934 he detached unmatured coupons of face value of $25,182.50 and transferred them by manual delivery to his son as a gift. The coupons matured later on in the same year, and the son collected the face amount, $25,182.50, as his own property. There

was a similar transaction in 1935. The petitioner kept his books on a cash basis. He did not include any part of the moneys collected on the coupons in his income tax returns for these two years. The son included them in his returns. The Commissioner added the moneys collected on the coupons to the petitioner's taxable income and determined a tax deficiency for each year. The Board of Tax Appeals, three members dissenting, sustained the Commissioner, holding that the amounts collected on the coupons were taxable as income to the petitioner."

The decision of the Board of Tax Appeals was reversed, and properly so, I think.

The unmatured coupons given to the son were independent negotiable instruments, complete in themselves. Through the gift they became at once the absolute property of the donee, free from the donor's control and in no way dependent upon ownership of the bonds. No question of actual fraud or purpose to defraud the revenue is presented.

Neither *Lucas* v. *Earl*, 281 U. S. 111, nor *Burnet* v. *Leininger*, 285 U. S. 136, support petitioner's view. *Blair* v. *Commissioner*, 300 U. S. 5, 11, 12, shows that neither involved an unrestricted completed transfer of property.

*Helvering* v. *Clifford*, 309 U. S. 331, 335, 336, decided after the opinion below, is much relied upon by petitioner, but involved facts very different from those now before us. There no separate thing was absolutely transferred and put beyond possible control by the transferror. The Court affirmed that Clifford, both conveyor and trustee, "retained the substance of full enjoyment of all the rights which previously he had in the property." "In substance his control over the corpus was in all essential respects the same after the trust was created, as before." "With that control in his hands he would keep direct

command over all that he needed to remain in substantially the same financial situation as before."

The general principles approved in *Blair* v. *Commissioner*, 300 U. S. 5, are applicable and controlling. The challenged judgment should be affirmed.

The CHIEF JUSTICE and MR. JUSTICE ROBERTS concur in this opinion.