**GALT**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

Nos. 10987, 11001.

United States Court of Appeals Seventh Circuit.

June 23, 1954.

Rehearing Denied Oct. 11, 1954.

Gerhard E. Seidel, Owen Rall, Walter W. Ross, Jr., Chicago, Ill., Eckert, Peterson & Lowry, Chicago, Ill., Tim G. Lowry, Elroy C. Sandquist, Jr., Chicago, Ill., of counsel, for Galt.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Attorney, Tax Division, Washington, D. C., Ellis N. Slack, Lee A. Jackson, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue.

Before MAJOR, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

MAJOR, Chief Judge.

Arthur T. Galt, petitioner (sometimes referred to as the taxpayer), petitions for a review of two separate decisions of the Tax Court, entered May 22, 1953, in which it was decided in Tax Court Docket No. 27,844 that there was a deficiency in petitioner's gift tax for the year 1946, in the amount of $768.84, and in Tax Court Docket No. 29,528 that there was a deficiency in petitioner's income tax for the same year in the amount of $68,318.17. Respondent, Commissioner of Internal Revenue, had asserted a deficiency in gift taxes for the year 1946 in the amount of $68,079.-00, and a deficiency in income taxes in the amount of $69,622.52. Petitioner sought from the Tax Court a redetermination of the deficiencies asserted by the Commissioner, which resulted in the aforesaid decisions by the Tax Court. The two proceedings were consolidated for hearing before the Tax Court and they are presented likewise here. Respondent has abandoned a cross-petition to review the Tax Court's decision in the gift tax case.

Preliminary to a statement of the contested issues, we think it appropriate to make a statement of the facts, about which there is little, if any, dispute and, in the view which we take of the legal issues presented, as subsequently disclosed, we think this statement may be brief as compared to the extensive findings entered by the Tax Court.

Petitioner, in 1922, acquired certain real estate (sometimes referred to as the "Fair Grounds" property), situated near Maywood, Illinois, a suburb of Chicago. From that time until 1946, the property was used for numerous purposes, with the income derived by the taxpayer little, if any, more than sufficient to pay the real estate taxes. In 1939, the property was leased to the Cook County Fair Association which improved the property by the construction of a track for harness races and a grandstand and other permanent improvements for the accommodation of spectators. This venture was unsuccessful and taxpayer continued to receive little, if any, net income. In July, 1945, the State of Illinois legalized pari mutuel harness racing in Illinois and on February 26, 1946, petitioner entered into a twenty-year lease with Maywood Park Trotting Association, Inc., as lessee (sometimes referred to as Maywood Park). The lease covers fifteen pages of the printed record and contains forty-six sections.

At this point, we think it material to relate only a portion of Secs. 1, 2 and 4. After providing that the lessee was to have and hold the property from January 2, 1946 until the 31st day of December, 1965, Sec. 1 provided that the lessee, in consideration of the demise, covenanted and agreed to pay the lessor as rent for said demised premises the sum of seven hundred thousand dollars ($700,000), at the rate of thirty-five thousand dollars ($35,000) per year, with the first annual rental payable July 1, 1946, and thereafter the annual rental was to be paid in advance on January 2 of each and every year of the term of the lease. This annual rental was characterized as "the guaranteed fixed rental." Sec. 2 provided that the lessee, in addition to the guaranteed fixed rental provided in Sec. 1, pay the lessor the following sums:

"One per centum of the First Ten Million ($10,000,000) Dollars wagered on said premises in any one calendar year and * * * two per

centum on all amounts wagered in excess of Ten Million ($10,000,000) Dollars in any one calendar year."

Sec. 4 provided:

"Any sums that may be due under the provisions of Section 2 of this lease shall be paid as follows:

40% to Arthur T. Galt, Lessor
20% to Arthur T. Galt, Jr.
20% to Raymond M. Galt
20% to William C. Galt

"The above persons designated to receive 20% each are sons of the Lessor who have irrevocably been given said interests by the Lessor, Arthur T. Galt, and any sums due them hereunder shall be paid to them by mailing the amount so due to their respective residences."

Arthur T. Galt, Jr., Raymond M. Galt and William C. Galt, named in Sec. 4 of the lease, at the time of its execution were adults. On February 26, 1946 (the same date on which the lease was executed), petitioner delivered to each of the three named sons a letter which, after reciting facts with reference to the execution of the lease, stated in part as follows:

"I want each one of you boys to have a part of the proceeds, if any there shall be, from the wagering that the Lessee speculates may take place. I therefore give you each a one-fifth ($\frac{1}{5}$) interest under the contingent percentage clause of the lease. This gift to each of you is absolute and irrevocable and I have provided in the lease that any sums, when, as and if, they become due, shall be payable to each of you in the amount of 20% directly by the Lessee. I have by proper provision in the lease divested myself of all dominion and control of the amounts if any should become due to the extent of the gift I am hereby giving you and further by this evidence of the gift to you, divest myself of any control or dominion over such amount. * * *

"You will all know, of course, that in making this gift, I am prompted by my love and affection for you. I hope with all my heart that there will be revenue coming and that you may enjoy the share that I have given you in such possible revenue, and take care of it, if the sum coming to you should be enough to provide you with more than a small part of your current living expenses.

"I am now in my sixties and never felt better or was in better health in my life than I am at this date, and as I come from a long lived family—my father having died at about ninety-two, I fully expect to live during the entire life of the lease, and share with you the fullest association of our mutual company.

"Assuring you of my fondest paternal affection,

"Your father,

/s/ Arthur T. Galt."

During 1946, the percentage rental provided in Sec. 2 of the lease amounted to $39,873.05, of which $15,949.22 (40%) was paid to petitioner and $7,974.61 (20%) to each of the three sons, as designated in the lease. Maywood Park, on October 22, 1946, made payment to each of the sons by its check, in which each was named as payee. A letter accompanying each check stated that the money thus paid "is your share under the terms of the lease." These checks were endorsed by the sons, deposited in their respective bank accounts and reported in their separate income tax returns as income. Petitioner in his federal income tax return for 1946 reported as rental income received from Maywood Park in that year in the amount of $50,949.22 ($35,000, the guaranteed rental, plus $15,949.22, 40% of the percentage rental). He did not report any of the amounts paid by Maywood Park to his sons.

As noted, the Commissioner determined a deficiency of $69,622.52 in taxpayer's income tax for 1946, which resulted in part from inclusion in his income of the aggregate of $23,923.83, received during that year by the sons as rental from Maywood Park. The Tax Court reduced the deficiency to $68,318.-17, which also resulted in part from inclusion in petitioner's income of the amounts thus received by the sons.

Petitioner filed a federal gift tax return for the year 1946, and in a schedule attached showed that on February 26, 1946, he made a gift to his sons of 60% of sums that might become due under the provisions of Sec. 2 of the lease dated February 26, 1946. The schedule stated that the percentages to be received by the sons were contingent and uncertain and of no value. Each of the sons filed a donee's information return of gifts which stated that the gifts were received on February 26, 1946, and that they had no value.

The Commissioner determined a deficiency in petitioner's gift tax for 1946 in the amount of $68,079.00, and in a memorandum attached to his deficiency notice stated:

"The value of 60% of the income under the percentage clause of the twenty year lease with Maywood Park Trotting Association, Inc., given to the donor's three sons is held to be $337,500.00 on the basis of information now of record, or in the alternative the gift to the three sons in 1946 is the 60% of the percentage income, or $23,923.83, the amount paid in to the sons under the lease."

The Commissioner's assertion of a deficiency based upon a valuation of $337,500.00 rested on the premise that petitioner made a gift to his sons on February 26, 1946 (the date of the execution of the lease), but the record contains no information as to the manner or means by which that amount was ascertained other than that stated in the deficiency notice, that it was "on the basis of information now of record."

The Tax Court sustained the income tax deficiency asserted by the Commissioner by including, as did the Commis-

sioner, in petitioner's income for 1946 the sum of $23,923.83, paid by Maywood Park to the three sons. (Other amounts of income which enter into the deficiency found by the Tax Court are not here involved.) Thus, one of the contested issues is whether the Tax Court correctly decided that the rental payments made by Maywood Park to the three sons in the year 1946 were includible in petitioner's income for that year.

At the inception of the hearing before the Tax Court, the Commissioner shifted his position on the gift tax issue by disclaiming the theory on which his deficiency had been asserted, that is, that petitioner made a gift to his sons on February 26, 1946, and advancing instead the theory that a gift was made during the year in the amount of $23,923.83. The Tax Court embraced this theory in its decision and found that petitioner made gifts to his sons during the year 1946, without finding the date on which the gifts were made. While not expressly stated, it is evident that the Tax Court's decision must rest upon the implied finding that the gifts were made on October 22, 1946. Petitioner before the Tax Court also shifted his position, not upon the crucial issue as to when gifts were made to his sons but upon their value. As already noted, in his gift tax return he asserted that the gifts were made on February 26, 1946, and that they had no value. At the hearing before the Tax Court, he still maintained that they were made on that date but contended that they had a value, in fact, proved by two expert witnesses that their value on that date was $34,090.00. Thus, there is no contested issue over the fact that petitioner made a gift to his sons during the year 1946. The controversy now is whether the Tax Court correctly refused to decide that petitioner made gifts to his sons on February 26, 1946, and to determine the value of the gifts as of that date. Or, conversely, did the Tax Court correctly decide that petitioner made gifts to his sons in 1946, without determining the

date of such gifts, although presumably they were found to have been made on October 22, 1946, with a value in the exact amount as was paid to the sons by Maywood Park on that date?

There seems to be prevalent in the case the idea that one party or the other will obtain an advantage, depending on which issue is first decided. Petitioner in his brief considers the gift tax issue first and urges the court to do likewise. This apparently is on the theory that a favorable decision on that issue would require a favorable decision on the income tax issue because it is argued that if petitioner made a gift to his sons on February 26, 1946, there could be no basis for including in petitioner's income the payments received by the sons as the result of such gifts. On the other hand, the Commissioner appears to desire a decision on the income tax issue first, apparently on the theory that if that issue is decided favorably to him, it would be repugnant to hold that petitioner made gifts on February 26, 1946.

In our view, this notion apparently indulged in by both parties has no basis in law or in fact. True, it has been held that the gift tax is supplementary to the estate tax, the two are in pari materia and must be construed together. Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20. See also Smith v. Shaughnessy, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690. There is no such relation, however, between a gift and an income tax. They are separate and distinct proceedings and neither is dependent upon the other as the basis for the imposition of a tax. And we think much of the confusion with which we are now confronted would not have existed if the proceedings had been tried and decided separately; it arises because the two proceedings were consolidated and presented together.

We shall, therefore, proceed as did the Tax Court and decide the income tax issue first. Before doing so, however, we note that there is a contrariety of opinion as to whether the asserted gifts

·made by petitioner were irrevocable and, if not, what, if any, power petitioner retained to command or control the receipt of rentals by his sons. It must be true that petitioner intended to make the asserted gifts irrevocable because he so stated both in the lease and in the letters to his sons. On the other hand, numerous provisions of the lease are cited by respondent, which it is urged require a contrary holding. We think this discussion can be laid aside as immaterial to the income tax issue and that it need not be considered in connection with the gift tax issue because there is no dispute between the parties that a gift was made. It is so asserted by respondent and found by the Tax Court, and it is conceded by petitioner. The sole controversy on this issue, as noted, is as to when the gift was made and of what it consisted.

We think the income tax issue was correctly decided by the Tax Court because it is supported by the principle announced in many cases, which in substance is that one who retains property from which income is produced is obligated to account therefor even though he has assigned it, thereby divesting himself of all control, and even though it is actually received by the assignee and not by him.

In Lucas v. Earl, 281 U.S. 111, 50 S. Ct. 241, 74 L.Ed. 731, a husband assigned a portion of his salary and earnings to his wife, which was paid to her pursuant to the terms of a written contract. In holding that the income thus paid to her was chargeable to the husband, the court, in discussing the pertinent provision of the Revenue Act, stated, 281 U.S. at page 115, 50 S.Ct. at page 241:

> "That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

The tree which produced the fruit in the instant case was the property, owned by petitioner after the execution of the lease as it had been before. The lease merely evidenced the manner in which the fruit from the tree should be distributed. Of course, by execution of the lease, petitioner's property rights were diminished to the extent that they were acquired by the lessee but no interest in the property or in the lease was transferred to the sons other than the right to receive income, the fruit from the tree.

A more pertinent case is Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75. There, a father, during the taxable years of 1934 and 1935, detached from negotiable bonds negotiable interest coupons and delivered them as a gift to his son. The coupons matured subsequent to delivery but during the same year. (The face value of the coupons delivered during each of the taxable years was $25,182.50.) The Supreme Court held that the coupons when collected by the son were income of the father and reversed the Court of Appeals for the Second Circuit, which had held to the contrary. The Court of Appeals decision, Horst v. Commissioner, 107 F.2d 906 is pertinent because its reasoning closely parallels petitioner's contention here. That court stated, 107 F.2d at page 907:

> "When the petitioner detached the coupons and handed them over to his son as a gift, the son acquired full title and dominion. The petitioner could not interfere in any way with the donee's control and right to receive the money when the coupons matured. Taxwise, the transaction was an outright assignment of future income from property, with the assignee the owner of the income prior to and at its realization."

The Supreme Court rejected this reasoning and, after referring to many cases, stated, 311 U.S. at page 116, 61 S.Ct. at page 147:

"Underlying the reasoning in these cases is the thought that income is 'realized' by the assignor because he, who owns or controls the source of the income, also controls the disposition of that which he could have received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants. The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them."

The court also stated, 311 U.S. at page 118, 61 S.Ct. at page 147:

"The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it."

In the same volume and immediately following the Horst case is Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81. In that case, a life insurance agent in 1924 and 1928 made assignments of commissions to become payable to him in the future. The commissions were paid to the assignee in 1933. Held that the commissions thus paid to the assignee in 1933 were includible in the assignor's income for that year.

Petitioner attempts to distinguish the Horst case because there the taxpayer by the assignment of the coupons before maturity deprived himself of income only for two years, while in the instant case petitioner deprived himself of income for twenty years. There is nothing in the court's opinion, however, to indicate that its decision would have been different had the assignment been for a longer term.

Thus, whether the income disposed of by gift be derived from the services rendered by the husband as in the Earl case, or whether it be interest on property as in the Horst case, or whether it be the assignment of commissions to become payable in the future as in the Eubank case, it is chargeable as income to the donor. The crucial question is, did the donor retain control or ownership of the source from which the income was produced? Another pertinent observation may be made of these three cases, that is, that in the Earl and Eubank cases the gifts were revocable while in the Horst case it was irrevocable.

■ The court in Harrison v. Schaffner, 312 U.S. 579, at page 580, 61 S.Ct. 759, at page 760, 85 L.Ed. 1055, in discussing the Horst and Eubank cases, stated:

"Decision in these cases was rested on the principle that the power to dispose of income is the equivalent of ownership of it and that the exercise of the power to procure its payment to another, whether to pay a debt or to make a gift, is within the reach of the statute taxing income 'derived from any source whatever'. In the light of our opinions in these cases the narrow question presented by this record is whether it makes any difference in the application of the taxing statute that the gift is accomplished by the anticipatory assignment of trust income rather than of interest, dividends, rents and the like which are payable to the donor."

It is suggested here that the rents payable to the sons were not and could not be paid to the donor. The point is, however, that petitioner as the owner of the property was entitled to all the income it produced and that he exercised his inherent power to provide that a portion of it be paid to his sons as a gift.

In Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, at page 605, 68 S.Ct. 715, at page 723, 92 L.Ed. 898, the court stated as to the Horst case:

"Moreover the Horst case recognizes that the assignor may realize income if he controls the disposi-

tion of that which he could have received himself and diverts payment from himself to the assignee as a means of procuring the satisfaction of his wants, the receipt of income by the assignee merely being the fruition of the assignor's economic gain."

And on the following page, it stated as to the Schaffner case:

"In Harrison v. Schaffner, supra, 312 U.S. at page 582, 61 S.Ct. at page 761, 85 L.Ed. 1055, it was again emphasized that 'one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid.' "

Petitioner places great reliance upon Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. That case was aptly distinguished by the Tax Court, which stated:

"Blair v. Commissioner, supra, is grounded on the very aspect of such a transaction which is absent here. That taxpayer's interest consisted solely of an equitable title which the court considered to be transferred pro tanto when the rights to the income from it were assigned. 'In the circumstances of that case, the right to income from the trust property was thought to be so identified with the equitable ownership of the property, from which alone the beneficiary derived his right to receive the income and his power to command the disposition of it, that a gift of the income by the beneficiary became effective only as a gift of his ownership of the property producing it. Since the gift was deemed to be a gift of the property, the income from it was held to be the income of the owner of the property, who was the donee

* * *.' Helvering v. Horst, supra."

For a further distinction of the Blair case see Helvering v. Horst, 311 U.S. 112, 118, 61 S.Ct. 144, 85 L.Ed. 75.

Petitioner also relies upon Farkas v. Commissioner, 5 Cir., 170 F.2d 201 and Hawaiian Trust Co., Limited v. Kanne, 9 Cir., 172 F.2d 74. In both of those cases there was an assignment not only of income but an interest in the property from which the income was produced. They both follow the decision in the Blair case, reach the same result and for the same reason. The cases thus relied upon by the petitioner are distinguishable on the ground that here there was no assignment of an interest in the property which produced the income or in the lease which provided for its distribution but only an assignment of income. In those cases the assignor had nothing left after the assignment; here he had everything except the portion of the income assigned. Petitioner cites no case and we know of none where it has been held that a property owner can escape accounting for the income produced therefrom merely by assignment of such income as a gift. And, as stated before, we think it is immaterial whether the assignment is revocable or irrevocable, or whether it is for a short or long term.

We have heretofore set forth the position which the parties originally took with reference to the gift tax issue. The Tax Court, after setting forth the facts relevant thereto, in its opinion stated:

"At the trial he [Commissioner] stated that he no longer contended that petitioner's gifts were made at the time of the assignment; as to that contention he conceded error, and he assumed the basic position that petitioner made gifts to his sons each year as, and in the amounts that, the rentals were paid to them year by year. Respondent now must be taken to admit, therefore, that a gift tax deficiency for

1946 in the amount of $68,079 is excessive, and that a deficiency is owing for that year only to the extent of the tax due on gifts valued at $23,923.83. * * * On the other side, petitioner now insists that gifts were made in 1946, and that they were made once and for all when the sons were given an interest in the rents; that the gifts, as then made, can be valued and that their total value was $34,090; and that petitioner owes a gift tax for 1946 based on that valuation."

The Tax Court then proceeds to decide the issue as follows:

"Because of the concessions of the parties, and because only the year 1946 is before us in this proceeding, it becomes unnecessary to consider when, and of what value, the gift was made. Respondent now seeks a gift tax for 1946 based on a maximum valuation of $23,-923.83. That is all the Government is asking for, and it is therefore not entitled to an award in a greater amount. Accordingly, since petitioner admits that he owes a gift tax based upon a gift of $34,-090, and since respondent now claims to be entitled only to a tax based upon a gift in the amount of $23,923.83, we must hold that the latter amount is the measure of petitioner's gift tax liability for 1946."

No case is cited either by the Tax Court in its opinion or by respondent in his brief in support of the result reached on this issue. The Commissioner concludes his argument, attempting to justify his shift in position, with the following statement:

"The significant thing in this case is that the Commissioner, when the controversy as to the two taxes finally reached trial before the Tax Court, upon a re-examination of his position, then determined to adhere to the position which seemed to him proper, namely to assert that the taxpayer was liable for an income tax upon the amounts paid to the sons in 1946 because that constituted taxable income to him and to assert that the taxpayer was liable for a gift tax for 1946 to the extent of the amounts paid to the sons in that year."

■ It is argued that the taxpayer has not been harmed inasmuch as he conceded that a gift was made in 1946 of a value greater than that claimed by respondent and that appears to have been the basis for the Tax Court's decision. We assume that ordinarily a party is in no position to complain where he is required by judgment or otherwise to pay a sum of money less than he admittedly owes. But there is more than that involved in this situation and the holding of the Tax Court overlooks the plain realities of the situation. While the court did not expressly so state, it is implicit in its holding that petitioner would be liable each succeeding year for a gift tax upon amounts paid to his sons under the terms of the lease. In fact, that was respondent's contention before the Tax Court, as shown in the quotation first above made from the opinion of the Tax Court, wherein it is stated that respondent "assumed the basic position that petitioner made gifts to his sons each year as, and in the amounts that, the rentals were paid to them year by year." This incongruous result would be in prospect notwithstanding the fact that petitioner committed no affirmative act with reference to payments to his sons other than that performed on February 26, 1946, when the assignments were made.

■ We think petitioner was entitled to a decision on his contention that a gift was made on February 26, 1946, a position which he maintained from the beginning to the present, in which the respondent originally acquiesced and a position upon which his deficiency was asserted. In view of that contention by petitioner, we think it unnecessary to determine whether a completed gift was made at that time or any other, which eliminates the necessity for any consid-

eration as to whether the gift was irrevocable. It appears to be the position of respondent that a holding that the gift was made at the time of the execution of the lease would be inconsistent with the decision that petitioner received income when payments were made to his sons. This suggestion ignores the difference between a gift taxable as such and the receipt of income for tax purposes. A gift tax is imposed not upon property but upon its transfer, while an income tax is imposed upon income at the time of its realization. To hold as we have that petitioner realized income when payments were made to his sons in October is not, as we think, inconsistent with a holding that petitioner made a gift to his sons in the previous February when the lease was executed.

■ It is our view that the gift, conceded by all parties to have been made in 1946, was made on February 26, as urged by petitioner. To think otherwise is to ignore the plain, unambiguous terms of the statute, as well as the regulations promulgated in connection therewith. Section 1000(b) of the Internal Revenue Code, 26 U.S.C.A. § 1000(b), provides for the imposition of a gift tax upon the transfer of property whether "the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible". Regulation 108, Sec. 86.2(a) in effect repeats the statutory definition and states:

"Inasmuch as the tax also applies to gifts indirectly made, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax."

We think it is hardly open to dispute but that petitioner's sons as donees at the time of the execution of the lease and assignments acquired a property right, that is, a right to receive income, a right to participate in the rental proceeds. The manner of the enforcement

of that right or what it might mean to the donees in the future is of no consequence. As was stated in Harris v. Commissioner, 340 U.S. 106, 111, 71 S. Ct. 181, 184, 95 L.Ed. 111:

"We, however, think that the gift tax statute is concerned with the source of rights, not with the manner in which rights at some distant time may be enforced. Remedies for enforcement will vary from state to state. It is 'the transfer' of the property with which the gift tax statute is concerned, not the sanctions which the law supplies to enforce transfers."

It is true, we think, that the value of the gift as represented by the assignment which petitioner made to his sons was speculative, uncertain and contingent upon future developments. This was recognized by petitioner in his letter to his sons which accompanied the assignments, in which it was stated:

"The value of this gift to you is to say the least questionable. The amounts, if any, that you may receive are purely speculative and contingent on so many factors, that it would be folly to place any worth on it."

Even so, this is an immaterial factor in determining whether a gift was made at that time. As was stated in Smith v. Shaughnessy, 318 U.S. 176, 180, 63 S.Ct. 545, 547, 87 L.Ed. 690:

"Even though these concepts of property and value may be slippery and elusive they can not escape taxation so long as they are used in the world of business. The language of the gift tax statute, 'property * * * real or personal, tangible or intangible', is broad enough to include property, however conceptual or contingent."

In response to a contention that a gift tax could not be imposed in the absence of an ascertainable donee, the court in Robinette v. Helvering, 318 U.S. 184, 186, 63 S.Ct. 540, 541, 87 L.Ed. 700, stated:

"The gift tax law itself has no such qualifications. It imposes a tax 'upon the transfer * * * of property by gift.' And Treasury Regulations 79, Art. 3, provides that 'The tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable.'"

See also Commissioner of Internal Revenue v. Berger, 2 Cir., 201 F.2d 171, 173.

Returning to Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, while the sole question decided was that the money received by the son from collection of the interest coupons was income chargeable to the father, the court recognizes that a gift was previously made and at the time when the coupons were delivered to the son. While the question was not before the court, it appears hardly open to doubt but that the father would have been subject to a gift tax upon the transfer or delivery of the coupons and that the value upon which the tax could have been imposed was that at the time of delivery rather than at the time of maturity when the son collected the coupons. Obviously, of course, the value of the gift in that case was more readily ascertainable than in the present case, but the fact that the value of the gift is difficult of ascertainment is not material, as we have shown.

Holding as we do that the gift in controversy was made by petitioner to his sons on February 26, 1946, there remains the question as to whether the proceeding should be remanded to the Tax Court for the purpose of finding its value. Ordinarily we would be disposed to so do in order that the Commissioner might have an opportunity to offer proof as to the value of the gift when made. However, this is not an ordinary situation. Petitioner by expert witnesses proved that the value of the gift when made was $34,090. Respondent had an opportunity but refused to offer evidence on this issue. Instead, he deliberately shifted his position for the purpose stated in his brief, "in order to protect the revenue." In view of our conclusion, it is evident that the Commissioner mounted a horse headed in the wrong direction. Such being the case, it is not discernible why petitioner should be put to the expense and vexation of another hearing on an issue which he sought to maintain and upon which he offered proof. The uncontroverted evidence is that the value of the gift when made was $34,090, which we under the circumstances accept as its value.

The decision of the Tax Court as to the deficiency in petitioner's income tax for the year 1946 is affirmed. The decision of the Tax Court as to the deficiency in petitioner's gift tax for the year 1946 is reversed and remanded, with directions that the deficiency in that respect be redetermined on the basis of this decision. Affirmed in part, reversed in part.