**Howard M. IBER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. P–2925.**

United States District Court
S. D. Illinois, N. D.

May 29, 1968.

Supplemental Opinion July 2, 1968.

William F. Kolbe, Peoria, Ill., for plaintiff.

Richard E. Eagleton, U. S. Atty., Peoria, Ill., for defendant.

## DECISION ON TRIAL WITHOUT JURY

ROBERT D. MORGAN, District Judge.

This action was brought to recover income taxes paid by plaintiff for the years 1962, 1963 and 1964.[1]

### FINDINGS OF FACT

The parties stipulated and the Court finds facts as follows:

1. Plaintiff entered into a lease with C. Iber & Sons, Inc., a corporation, of which he was president and a substantial stockholder, covering real estate owned by the plaintiff. The term of the lease was 132 months at a rental of $475 per month, commencing on September 1, 1959 and terminating on August 31, 1970.

2. Thereafter, on February 1, 1960, plaintiff assigned to the Commercial Na-

---

1. It is stipulated that following the Court's decision the parties "will submit agreed-  to computations as to the amount, if any, of any judgment to be entered."

tional Bank of Peoria, Illinois, as trustee, the lease entered into between himself and C. Iber & Sons, Inc., and entered into a written trust agreement with the bank under which the bank, as trustee, is to accumulate and pay the income received from the rented property to plaintiff's children. The trust has a duration of ten years and one day, after which the lease is to revert to plaintiff.

3. During the years 1962, 1963 and 1964, all income, being simply the rent under the lease, was paid to the trust by the lessee. The plaintiff did not report this rent as income for tax purposes and the trustee filed fiduciary returns. However, plaintiff did continue to claim deductions for depreciation, real estate taxes and interest on a mortgage to which the lease is subject.

4. On audit of plaintiff's income tax returns for the years 1962, 1963 and 1964, the District Director of Internal Revenue determined the rental income received by the trust should be taxed to the plaintiff rather than to the trust or its beneficiaries. The Director assessed the resulting deficiencies against the plaintiff. These deficiencies were paid by the plaintiff on July 11, 1966.

5. On August 23, 1966, the plaintiff filed claims for refund, which claims were disallowed by the District Director on February 28, 1967.

6. The plaintiff, together with his wife, children and brothers, owned substantial control of the lessee, C. Iber & Sons, Inc., through stock ownership and plaintiff has been its president at all times since its incorporation.

7. The plaintiff was not a member of the Board of Directors or a shareholder of the Commercial National Bank of Peoria at any time material herein.

8. During the years 1962, 1963 and 1964, the trustee did not receive any supplemental rent payments due under the lease on account of real estate tax increases for those years, but such supplemental rent payments were all made to the trustee on August 5, 1966, as follows: $388.13 for 1962, $408.32 for 1963, and $541.06 for 1964.

The Court further finds as facts from the undisputed testimony of the plaintiff and Mr. Warren M. Webber, Vice President of the trustee bank, as follows:

9. Plaintiff filed a gift tax return on his gift to this trust, which was audited by the government with the result that the declared valuation of the gift was substantially increased.

10. There was no agreement between plaintiff and the trustee bank that the mutual rights and obligations would be any different than set forth in the trust agreement.

11. Mr. Webber endorsed on his file memorandum for this trust, which memorandum simply summarized facts about the Howard Iber family, explained what the plaintiff hoped to accomplish for his children through the trust, and a brief statement of the lease as sole asset of the trust, the words, "We have no responsibility whatsoever as to management of the real estate subject to lease, insurance, taxes or the like."

12. The lease reserved to plaintiff-lessor the right to explore for and remove any minerals from the land and he expressly reserved such rights in his assignment of the lease to the trustee bank.

## THE ISSUE

The defendant states the question presented to be: "When a taxpayer transfers to a trust his rights, privileges and benefits under a lease, but retains the burdens, responsibilities and deductions from income, may he avoid the tax liability on the rents paid to the trust?" The plaintiff poses the issue as: "When a lessor assigns his leasehold interest to a trust, does his retention of the reversion cause the rental income to be taxed to him rather than to the trust or its beneficiaries?" The Court considers the question for decision to be: "Did the plaintiff here convey income-

producing property to the trustee or merely his right to income?"

It is clear that if what has taken place here is simply the assignment to the trustee of the plaintiff's right to receive rents due to him, he is as taxable on them as if he had received them. See Galt v. C. I. R., 216 F.2d 41 (C.A. 7th, 1954) and cases there cited. Defendant says "the instant case is indistinguishable from *Galt*"; and argues that, since plaintiff retained fee title to the land, he retained the source from which the income was produced and conveyed to the trust only the right to the rental income. Plaintiff argues, however, that he made a full and valid assignment of the lease (the lessor's total interest therein); and that thereafter the trustee owned and controlled as a fiduciary all the lessor's rights and duties, including the obligation to collect rent and otherwise enforce the lease. This argument says in effect that the lessor's leashold interest (including the tenant's promise to pay rent and otherwise perform the lease) is the "property" which produces the income, separate from the legal title to the land which, standing alone, produces no income. He cites an Illinois statute (Ch. 80 Ill.Rev.Stat. § 14) and a case applying it (Keeley Brewing Co. v. Mason, 102 Ill.App. 381) which give assignees of any lessor the same remedies against non-performance by lessees as the lessor had, and thus recognize the lessor's interest in a lease as property capable of conveyance separate from the fee title.

What plaintiff conveyed to the trust here is clearly more than the interest coupons on a bond, as in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L. Ed. 75, and, as plaintiff points out, in that case the Supreme Court recognized the distinction between such a simple right to interest and "rent from a lease * * * after the leasehold * * * had been given away" (311 U.S. 119, 61 S. Ct. 148). Likewise, in the *Galt* case, the Court of Appeals for this circuit, in holding that a lessor's *sharing* of rent with his sons, as provided by the terms of a lease of his land, was simply the assignment of income and thus taxable to him, indicates that a different result might have been reached if there had been "assignment of an interest * * * in the lease" (216 F.2d 48). Nevertheless, that court, in the same sentence, also indicates that it was "the property" (apparently referring to the fee interest or reversion) which *produced* the income which the lease there simply distributed.

Plaintiff relies heavily on Blair v. C. I. R., 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, in which the Court found an equitable property interest had been assigned by a trust beneficiary (not merely a right to income) and thus that the income therefrom was taxable to the donee rather than the donor, and asks that this case be likened to that set of facts and that result rather than to those in *Galt*. This case appears to the Court to fall somewhere between *Blair*, on the one hand, and *Horst* and *Galt* on the other.

## DECISION

While the issue seems very close on the facts here, the Court believes that the case must be dismissed and that judgment must be rendered for the defendant.

As stated in *Galt* (216 F.2d at p. 47), "The crucial question is, did the donor retain control or ownership of the source from which the income was produced?" This court does not believe the "control" referred to in that question has reference to any control plaintiff may have been in a position to exercise over the lessee here as its president and stockholder. The Court believes that immaterial and that the bank, as trustee, after execution of the trust agreement and accompanying assignment of lease, did have full and unfettered control and ownership of the lessor's interest in the lease. It had fiduciary responsibility with respect to that interest and there is no basis for supposing that its rights and obligations would not be carried out in accordance with the trust it accepted. It is believed that the trust here had a valid *res*, i.e., that "property" was trans-

ferred to it. It is not believed, however, that it can be said that the trust *res* here, the lessor's interest in the lease separate from his title to the land, was the source from which the income was produced so as to remove the income from the taxable income of the donor.

Since the lease is the trust *res*, what happens if the lease ceases to exist through cancellation on default by the lessee, through cancellation by lessee after substantial condemnation, through an election not to rebuild improvements after destruction, or otherwise? Plaintiff assumes and asserts that the trustee may relet the premises if lessee defaults and that it is entitled to receive "its share" of any condemnation award. He does not deal with the question of possible cancellation upon destruction of improvements. The documents here do not justify these assumptions. The trust agreement involves only the "Written Indenture of Lease," and the "Assignment of Lease" purports to convey only the lessor's rights *thereunder*—none of his additional rights as owner of the fee title subject only to the lease. If the lease has ended, what then is the trust *res*?

It seems clear that a right to relet upon cancellation of a lease is an incident of ownership of the reversion rather than an incident of the property assigned by the land owner when he assigned his interest in the former lease. Under the lease here, if a substantial portion of the property is taken by public authority, the lessee could cancel the lease, and the lease is terminated upon the lessor's decision not to rebuild after destruction of the improvements by fire or other casualty. Query, whether in these circumstances there is a 10-year trust under Section 673(a) of the Internal Revenue Code of 1954. In any event, the documents here are not subject to the interpretation, and it is inconceivable that the parties really intended, that the plaintiff here should have no voice in any reletting or in any necessary decision on the question of re-building destroyed improvements. This simply means that, while a valid trust was set up and property was transferred to it, the plaintiff, the owner of the land subject to the lease and the trust, did not really convey to the trustee *the property which produced the income*, as this court believes is necessary to avoid taxation on the income under unavoidable implications of the decisions in *Horst* and *Galt*, in spite of dicta therein which suggest the contrary.

Plaintiff also relies upon Lum v. C. I. R., 147 F.2d 356, from the Third Circuit, which mentioned *Horst* and *Blair* and appeared to rely on the dictum from *Horst* in holding that two assignments of lessor's interests in leases did effectively make the rental income taxable to the assignee rather than to the assignor. The short opinion there did not discuss the terms of the assignments, but the Court found that they made the assignee the "owner" of the real estate let to lease. As indicated above, this Court does not believe the assignment here had that effect. Neither does this Court believe that the decision in Winters v. Dallman, 238 F.2d 912 (C.A. 7th Cir. 1956) is inconsistent herewith, or that the reference to *Lum* contained in that opinion, along with the dictum in *Galt*, indicate that the Court of Appeals for the Seventh Circuit has decided that a transfer of a lessor's interest in a lease as carried out here shifts the income for tax purposes to the transferee. That court does not appear to have really faced this difficult question.

In view of the opinions stated herein, it does not appear necessary to discuss other arguments made by counsel or other cases cited in their very scholarly briefs. It is believed that the foregoing makes clear which facts the Court believes are relevant and which are not and consequently the rulings this Court considers proper on objections to evidence.

Judgment will be entered for the defendant at plaintiff's cost.

### SUPPLEMENTAL OPINION ON MOTION UNDER RULE 52(b)

Since filing of the Court's original decision herein and entry of judgment thereon, plaintiff has filed a motion under Rule 52(b) for "Reconsideration, Alteration and Amendment of Judgment." The Court entertained said motion over government objection, same has been argued by counsel for both sides, and additional memoranda have been filed.

Plaintiff's basic argument runs: (1) that the "Assignment of Lease" here conveyed much more than the landlord's interest in this particular landlord-tenant relationship by virtue of language therein which says: "hereby vesting, and intending to vest, in (the Trustee) * * * all the rights * * * retained by me in said written indenture of lease, * * *"; (2) that since the right of re-entry on non-payment of rent was specifically retained by plaintiff in the lease, that right was clearly conveyed to the trustee by the assignment; and (3) that this demonstrates error in the Court's conclusion that the trustee had no right to relet in such circumstances.

Plaintiff argues further that the "Assignment of Lease" conveyed the property which produced the income because the conveyance was "for the term and for the purposes described in the Trust Agreement," demonstrating that the rights and powers of the trustee as assignee-lessor were to exist for the term of the trust, even if the landlord-tenant relationship set up by this lease were ended earlier. Additional authorities are cited supporting the proposition that a right of re-entry is capable of assignment in Illinois.

While this argument has a degree of plausibility which teases the mind, the Court does not believe it is sound. It is apparent that the trustee had a right and duty of re-entry upon the tenant's default; but the problem is: "What then?" The lease does not speak of reletting. That is an obvious right of the person who holds the reversion after the lease is terminated, and neither the language of the assignment nor the trust agreement indicate an intention that such right of reletting was to be transferred to the trustee here any more than the right to decide upon reconstruction after a fire, as mentioned in the original opinion. Nothing was transferred but the lease, and nothing "retained" therein can survive the lease in the transferee unless it is to be said that this "Assignment of Lease" was to operate as a deed of the land, because the right of reversion as fee owner at the end of the lease term was as clearly retained by the original lessor, the plaintiff here. If a deed of the reversion were intended, it could have been made so much more easily that such intention simply cannot be inferred from what was written here. It seems apparent, that for his own tax or other purposes, the plaintiff here intended to assign only this specific lease which the assignment described. Whatever was meant by the language concerning assignment of rights retained in the lease, it was not, in the opinion of this Court, effective to assign sufficient property interest, beyond the right to receive rent, to remove such rent from the income of the plaintiff here for income tax purposes under the doctrine of the *Horst* and *Galt* cases cited in the original decision herein.

Plaintiff also suggests in support of his motion that the Court's question in the original decision, on the existence of a ten-year trust here, is unfounded in the light of the Regulations of the Commissioner of Internal Revenue, Section 1.673(a)–1(c). This point is believed to have merit because it is not considered that default by the lessee here, or destruction of the improvements by fire or other casualty, might "reasonably be expected to occur" within the ten-year and one-day term of the trust. However, removal of this concern does not alter the rationale of the decision.

The motion is denied and the original decision is sustained.