**Howard M. IBER, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**No. 17141.**

United States Court of Appeals,
Seventh Circuit.

March 20, 1969.

---

38. RT 65–66.

39. RT 61–62.

William F. Kolbe, Racine, Wis., for appellant.

Mitchell Rogovin, Kenneth L. Gross, Tax Div., Dept. of Justice, Washington, D. C., Richard E. Eagleton, U. S. Atty., Peoria, Ill., Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before HASTINGS, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Howard M. Iber (taxpayer) brought this action against United States of America. He sought refund of federal income taxes in the amount of $11,521.-19, and interest, paid by him during the calendar years 1962, 1963 and 1964. The facts were not in dispute and were largely stipulated. There was a bench trial. The trial court entered findings of fact, ···'ed a memorandum decision and judgment was entered thereon adverse to taxpayer and favorable to the Government. After a hearing on taxpayer's motion for reconsideration, the motion was denied and the original decision sustained. Taxpayer appealed. We affirm.

Taxpayer owned certain improved real estate in Illinois for use in the general contracting business. He was president of and a substantial shareholder in C. Iber & Sons, Inc., an Illinois corporation, with its principal office in East Peoria, Illinois. Together with his wife, children and brothers, he was in control of such corporation.

On September 1, 1959, taxpayer leased the above mentioned real estate to the Iber corporation for a term of 132 months at a rental of $475 per month, beginning that date and terminating August 31, 1970.

On February 1, 1960, taxpayer assigned such lease to Commercial National Bank of Peoria, Illinois, as trustee. At the same time, taxpayer entered into a written trust agreement with the trustee. Under this trust agreement the trustee was to accumulate and pay the income received from the leased real estate to taxpayer's two children, then 20 and 17 years of age. The trust had a duration of ten years and one day, after which the subject real estate lease reverted to taxpayer.

There was no agreement between taxpayer and the trustee that their mutual rights and obligations would be other

than set forth in the trust agreement. An officer of the trustee bank endorsed for the file a memorandum stating, with respect to the trust in question, "We have no responsibility whatsoever as to the management of the real estate subject to lease, insurance, taxes or the like."

In the written assignment of the subject lease by taxpayer to the trustee, after identifying the real estate and the written lease, the interest assigned was described as:

"* * * all my right, title, interest and claim in and to said written Indenture of Lease for the term and for the purposes described in said Trust Agreement, hereby vesting, and intending to vest, in COMMERCIAL NATIONAL BANK OF PEORIA, Trustee, all the rights, privileges and benefits conferred upon or retained by me in said written Indenture of Lease, excepting, only that I reserve unto myself the rights and privileges described in Paragraph 12 of said Indenture of Lease."

The reservation referred to in Paragraph 12 of the lease was the right to explore and remove any minerals from the leased land.

During the years 1962, 1963 and 1964 all income, being only the rent payable under the lease, was paid to the trust by the lessee Iber corporation. Taxpayer did not report this rent as income for tax purposes; the trustee filed fiduciary returns. However, taxpayer did continue to personally claim deductions for depreciation, real estate taxes and interest on a mortgage to which the lease is subject.

Following an audit of taxpayer's income tax returns for the three years in question, the District Director of Internal Revenue determined that the rental income received by the trust should be taxed to taxpayer, rather than to the trust or its beneficiaries. The resulting income tax deficiencies were assessed against taxpayer. These deficiencies were paid by him on July 11, 1966. The instant litigation followed.

The district court held in substance that taxpayer's assignment of his rights under the lease to a trust for the benefit of his two children was an assignment of future income, rather than a transfer of income-producing property, and that consequently the rent paid under the lease remained taxable to him. Or, as the trial court stated the question for decision: "Did the plaintiff [taxpayer] here convey income-producing property to the trustee or merely his right to income?" In deciding this question adversely to taxpayer, the trial court's conclusion and holding frame the issue on appeal.

At the outset, it appears that taxpayer assigned only rights under a lease for the duration of the trust. At the same time, taxpayer retained not only a reversionary interest in the lease but the entire reversionary interest in the land itself.

The Government suggests that an assignment of a lease by one who continues to hold the reversionary interest in the land *never* constitutes a transfer of income-producing property. It would prefer we accept this conclusion and rest our decision on this broad basis. Taxpayer asserts a contrary result is dictated by the rationale of cited authority.

However interesting the solution of such a broad question might be, the Government concedes we need not reach it here. We shall confine ourselves to the more narrow situation before us.

■ Taxpayer contends that since the assignment of the subject lease transfers all rights "conferred upon or retained by me" in the lease, this transfer includes those rights he already held as owner of the real estate. In effect, taxpayer argues that a deed of the reversion was intended and may be inferred from the language of the transfer. We agree with the trial court that if such was the intention of taxpayer a much easier way could have been found to do this. We think taxpayer overreaches by his strained construction. Our conclusion is that taxpayer did not assign his reversionary interest in the lease or in the real estate.

The conferred or retained rights could only have reference to benefits associated with the lease.

We believe this case is controlled by the rationale leading to the conclusion and holding in Galt v. Commissioner of Internal Revenue, 7 Cir., 216 F.2d 41 (1954), *cert. denied*, 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743. In a well-considered opinion by Chief Judge Major, the court first laid down the general holding that " * * * it is supported by the principal announced in many cases, which in substance is that one who retains property from which income is produced is obligated to account therefor even though he has assigned it, thereby divesting himself of all control, and even though it is actually received by the assignee and not by him." 216 F.2d at 46.

In *Galt,* taxpayer owned real estate subsequently leased and improved for harness racing. In addition to fixed rentals, provision was made for the payment of further rent based on a percentage of gross wagers at lessee's race track. Taxpayer provided in the lease that 60% of such additional rents be paid in equal parts to his three sons and made a formal assignment thereof to them. We affirmed the Tax Court's holding that taxpayer remained taxable on the assigned rents. This was on the ground that taxpayer remained the owner of the property that produced the rental income, the real estate itself, and merely assigned the rights to receive rents. The court thus answered the "crucial question" it asked itself: " * * * did the donor retain control or ownership of the source from which the income was produced?"

In *Galt,* notice was taken of the delightful analogy drawn by Mr. Justice Holmes in Lucas v. Earl, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731 (1930), in referring to " * * * anticipatory arrangements * * * by which the fruits are attributed to a different tree from that on which they grew." Chief Judge Major then drew his own analogy:

"The tree which produced the fruit in the instant case was the property, owned by petitioner after the execution of the lease as it had been before. The lease merely evidenced the manner in which the fruit from the tree should be distributed. Of course, by execution of the lease, petitioner's property rights were diminished to the extent that they were acquired by the lessee but no interest in the property or in the lease was transferred to the sons other than the right to receive income, the fruit from the tree." 216 F.2d at 46.

The opinion in *Galt* then fully reviews the supporting cases of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655 (1940); Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81 (1940); and Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055 (1941). It distinguishes Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937), mentioned by the parties here. We are content to accept this summary of these cases and see no reason to repeat it here. *Cf.* Winters v. Dallman, 7 Cir., 238 F.2d 912, 914–915 (1956).

We have noted carefully the various contentions of the parties and the district court with reference to the construction to be given certain provisions of the trust agreements, together with the lease and its assignment.[1] We find none of these controlling for the simple reason that we are of the view, as the district court stated, " * * * that, while a valid trust was set up and property was transferred to it, the plaintiff, the owner of the land subject to the lease and the trust, did not really [sic] convey to the trustee *the property which produced the income,* as this court believes is necessary to avoid taxation on the income un-

---

1. These deal generally with the trust *res*; the responsibility, if any, of the trustee in the event of cancellation on default by the lessee, or after condemnation or through an election not to rebuild improvements after destruction; the right of reentry and to sublet, and the like.

der unavoidable implications of the decisions in *Horst* and *Galt*, * * *."

█ In sum, the rights assigned by taxpayer related primarily to the trustee's obligation to collect and accumulate the rents and enforce covenants pertaining thereto. The real estate itself which produced the income remained with taxpayer. The trial court did not err in finally concluding and holding that the right to future income was assigned and the income-producing property was retained by taxpayer.

For the foregoing reasons, the judgment of the district court is affirmed.

Affirmed.