PEOPLE OF STATE OF CALIFORNIA ex rel. McCOLGAN, State Franchise Tax Adm'r, v. BRUCE.

No. 104.

District Court, D. Nevada.

March 22, 1941.

812

Earl Warren, Atty. Gen., of California, and Valentine Brookes and H. H. Linney, Deputy Attys. Gen., of California, for plaintiff.

Brown & Belford, of Reno, Nev., amici curiae.

A. P. Johnson, of Reno, Nev., for defendant.

NORCROSS, District Judge.

This is an action to recover·an amount of income tax in the sum of $4,345.84, alleged to have accrued in 1937, while defendant and his wife were residents of the State of California, by reason of defendant, then becoming entitled to the sum of $70,000, as the proceeds of a winning ticket in the so-called Irish Sweepstakes, payment therefor being subsequently made to defendant in the State of Nevada.

A primary question to be determined is that of jurisdiction. By the pleadings, the question of jurisdiction is presented in a number of respects. The amended complaint alleges: "This Court has jurisdiction because this is a controversy between citizens of two states involving an amount in excess of $3,000. Charles J. McColgan is a citizen of the State of California and defendant * * * a citizen of the State of Nevada. * * * this is an action for taxes. Jurisdiction is founded on section 24 (5) of the Judicial Code * * *, 28 U.S.C.A. § 41 (5). * * * because Article IV, section 1 of the United States Constitution, commonly known as the full faith and credit clause, compels it to exercise jurisdiction." The answer denies these allegations excepting in respect to the citizenship of Charles J. McColgan and defendant.

As having a bearing on the question of jurisdiction, paragraph II of the amended complaint and the answer thereto are, also, here quoted:

"That Charles J. McColgan is the duly appointed, qualified and acting Franchise Tax Commissioner of the State of California and as such is authorized by law to administer the California Personal Income Tax Act, Statutes of California 1935, page 1090, as amended.

"That section 28 of said act provides in part as follows: 'Foreign Action. The commissioner may bring an appropriate action (whether in the form of a common law action of debt or indebitatus assumpsit, or a code or other action), in any court of competent jurisdiction in the United States or in a foreign country, in the name of the people of the State of California, to recover the amount of any taxes and interest due under this act. The Attorney General or the counsel for the commissioner of this State must prosecute such action.'

"That Earl Warren is the duly elected, qualified and acting Attorney General of the State of California and as such is authorized by law to prosecute this action, and the State of California is one of the sovereign states of the United States."

The answer thereto reads: "Defendant admits the allegations contained in paragraph II of the plaintiff's complaint, except that he specifically denies that Charles J. McColgan, as State Franchise Tax Administrator, is authorized by law to prosecute this action. In this connection defendant alleges any and all moneys received by Charles J. McColgan, as State Franchise Tax Administrator, are the property of the State of California, and said McColgan has no right or duty therein, save and except to receive and to keep in his possession moneys for the State of California."

The salient facts of the case are that in the year 1936, while defendant and his wife were residents of the State of California, defendant purchased, from his earnings, a ticket in the Irish Sweepstakes, which ticket later drew a horse. Thereafter defendant sold a half interest in the ticket to a New York Syndicate for $5,000. About May 26, 1936, the race was run and the horse drawn by the said ticket won first place entitling the holders of the ticket to the first prize of $150,000. Payment was not immediately made to defendant for his interest by reason of a suit instituted by one William Leathe in Ireland who, also, claimed a half interest in the winnings. This case was finally settled by an agreement that an amount be paid to Leathe and his attorneys in the sum of $10,642.84. In May 1937, not later than May 5th, defendant and his wife left the State of California and established their residence in Nevada, since which time they have continuously so resided and are now such residents.

Defendant, after establishing his residence in Nevada, made arrangements with the First National Bank in Reno to handle the collection of any balance payable on account of said winning ticket. On June 24, 1937, such collection was made by said Bank and the amount thereof $59,356.66, less charges, costs, and an advance of $50, theretofore made to defendant, was deposited to the credit of defendant and his wife, the net amount of such deposit being the sum of $59,242.64. In 1938, defendant and his wife each made income tax returns to the United States Collector of Internal Revenue at Reno, Nevada, on one-half of the gross returns so received, $29,646.32, and paid the tax assessed thereon.

■■ This case clearly should be treated as a suit brought by the State of California as the real party in interest and not as a suit between citizens of different states. Robertson, State Revenue Agent, v. Jordan River Lumber Company, 5 Cir., 269 F. 606; Hertz v. Knudson, 8 Cir., 6 F.2d 812, 815. This suit being one to recover a judgment for taxes, the recent decision of the Supreme Court of the United States in Massachusetts v. Missouri, 308 U.S. 1, 60 S.Ct. 39, 84 L.Ed. 3, appears to sustain the view that this Court has jurisdiction of the pending action. See, also, Milwaukee County v. White Co., 296 U.S. 268, 56 S. Ct. 229, 80 L.Ed. 220; Hertz v. Knudson, supra. It is the conclusion that this Court has jurisdiction.

■ The next question presented for determination is the time when defendant became liable to a tax by reason of his ownership in said ticket—did said liability occur while he was a resident of the State of California or not until after he became a resident of Nevada? The income tax law of the State of California follows generally the provisions of the Federal income tax law. It is not contended that the rules applicable to its interpretation would vary from those applicable to the Federal statute; upon the contrary, it is conceded that the construction placed on similar provisions are controlling. In the opinion of the Supreme Court in Helvering v. Horst, delivered November 25, 1940, 311 U.S. 112, 61 S.Ct. 144, 146, 85 L.Ed. ——, 131 A.L.R. 655, appear the following statements:

"From the beginning the revenue laws have been interpreted as defining 'realization' of income as the taxable event rather than the acquisition of the right to receive it. And 'realization' is not deemed to occur until the income is paid. * * *

"In the ordinary case the taxpayer who acquires the right to receive income is taxed when he receives it, regardless of the time when his right to receive payment accrued. But the rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received payment of it from his obligor."

■ There is nothing in the case now before this Court which brings it within any exception to the general rule above quoted. There is nothing in this case even remotely suggestive that defendant had "fully enjoyed the benefit of the economic gain represented by his right to receive income" prior to "the receipt of it by the taxpayer." See People v. Rosen, 11 Cal.2d 147, 78 P.2d 727, 116 A.L.R. 991. The rule applicable here is that of "the ordinary case."

Defendant being a resident of the State of Nevada at the time he received payment, he was not liable to any income tax thereon to the State of California. Defendant is entitled to judgment accordingly.

It is so ordered.