EVERETT N. CROSBY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104252. Promulgated February 18, 1942.

*Todd W. Johnson, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

OPINION.

DISNEY: The petitioner concedes his taxability upon $3,032.61 as one-half of the community income prior to the separation agreement, and upon $10,000 of the $51,052.42, received thereafter, since $10,000 was received for services performed after February 11, 1938. Therefore the only question to us presented is whether he is taxable upon $41,052.42, received after February 11, 1938, which is stipulated to have been "for services performed by him prior to February 11, 1938, in negotiating contracts for the services of Bing Crosby."

This conclusion depends upon the effect of the property settlement upon income from services performed before such settlement, but received thereafter. Upon brief the petitioner agrees (and the law is well settled) that the husband and wife could by the property settlement make the commissions in question the property of the petitioner when received, and that they did so. They were not paid to the wife. The question is therefore, whether, though received by the husband and not the wife after the property settlement, the amounts are, as contended by the petitioner, taxable to him only to the extent of one-half because earned during the marital community. Cases cited to the effect that the character of income as to whether community or not, is to be determined as of the date of inception of the contract from which they are derived, do not here apply, for the question here is as to the effect of a property settlement.

On that question the petitioner's argument in substance is, first, that the petitioner purchased the right to the income from his wife and had not in the taxable year recovered his basis of cost and was therefore not taxable; second, that if not a purchase and sale, the transaction was a division or partition of property, analogous to distribution in kind by a partnership, and that, applying the law as to partnerships, petitioner has not recovered his base; and third, that if there was no consideration for the assignment by the wife, then under *Helvering* v. *Horst*, 311 U. S. 112, and other cases, the wife was for tax purposes unable to assign income and was still taxable on her community one-half of what petitioner received in the taxable year. The respondent's view is in effect that after the property settlement separating the community property rights, both the parties and the

Government are bound thereby, rendering later receipts taxable in accordance with ownership.

We conclude, first, that there was consideration for the transaction agreement, and that the theory underlying the *Horst* case does not apply. The mutual agreements and covenants, specifically stated in the agreement to be the consideration therefor, and the division of the community property, plainly constitute ample consideration. Mutual consent is sufficient consideration. Sec. 160, Cal. Civ. Code. A gift is not involved. *Wren* v. *Wren*, 100 Cal. 276; 34 Pac. 775. Nor can we apply *Mrs. Len Langston*, 23 B. T. A. 991, cited by the petitioner, for that proceeding involved a mere donation of right to receive income, unconnected with any division or conveyance of property.

Petitioner's theory that there was distribution of partnership property calling for application of the basis of a partner, so that under section 113 (a) (13), Revenue Act of 1938, no tax would be payable by him, is in our opinion untenable; and in any event no basis is shown. A marital community can not soundly be viewed as so completely a partnership as to require application of the Federal statutes as to income tax relative to that entity, as petitioner alternatively asks. The nature of the wife's interest in the community estate has been the subject of much discussion, with conclusions various; but we think it clear that the power of management in the husband, the grave question as to ownership in the wife, and her limited powers, well indicate that such relation was not contemplated by Federal income tax statutes as to partnership. Indeed, this is shown by section 113 (a) (13), relied on by petitioner, for that section gives the partner, in case of distribution in kind to him, a basis of "such part of the basis in his hands of his partnership interest as is properly allocable to such property." Though, as petitioner argues, the allocation is to be in proportion with property values held and distributed at the time of distribution, yet the petitioner errs in finding a basis in cost to the partnership, thereby demonstrating the inapplicability of the partnership theory to a community estate. As shown by G. C. M. 20251, C. B. 1938–2, p. 169, cited in part by petitioner, a partner's base is not cost to the partnership, but his contribution to the partnership, proportioned to the property distributed in the ratio of its value to the value of all partnership assets. Here there was no contribution to a partnership, or to the community estate. At approximately the date of marriage, the petitioner's assets were nothing, as shown by his testimony, so that petitioner had no "basis in his hands of his partnership interest", in the words of section 113 (a) (13), to allocate to the property distributed to him. This indicates that to a marital community, to which as such there is no contribution of property or money, should not be applied the statutes as to partnership. A husband and wife might

form a partnership and contribute money or property thereto, but they do not do so merely by marrying and living in a community property state. But in any event, as above set forth, petitioner has shown no basis to allocate in proportion to values at the date of contract.

This leaves for consideration petitioner's theory that he purchased from his wife the right to the income involved, and has not recovered his base therein. Though we have above held that consideration was involved in the contract, that fact alone does not demonstrate that there was a sale, within the purview of the Federal income statutes. The parties may, in California, agree to divide community by a contract not amounting to a conveyance. The California statute, section 159, Civil Code, merely provides that a husband and wife may by contract alter their legal relations as to property. A sale is not required. Was there in fact a sale herein? The petitioner relies in part upon the fact that he received the greater portion of the community property, assumed the community debts, and agreed to pay $22,000, and contends that the $22,000 was not for alimony, but for the wife's interest in the property rights. We find no assumption of the community debts, except certain items. Petitioner asserts that he received all of the community property, except the promissory note of $7,016.17. The record shows that other community property was received by the wife, and, further, by a blind reference in the agreement of February 11, 1938, to division to the wife of personal property covered by a previous division of property on February 3, 1938, fails to show what proportion of the entire community property was received by the wife. Though the petitioner testified that the $22,000 was not paid for alimony, the agreement specifically in a separate paragraph, covers the matter; states that it is paid "as and for alimony and her support and maintenance"; and earlier, after reference to settlement of property rights reads: "and to provide for alimony and the support and maintenance of said Second Party * * *." Moreover, the money payments upon the $22,000 total were to be cut down in case of remarriage of the wife, she in that event thereafter to receive payments of only $100 per month, only until 73 months from the date of the agreement. Elsewhere the agreement provides a release by the wife of "all claims for alimony pendente lite or permanent alimony, excepting as herein provided." The contracting parties particularly agreed that the agreement had been read and explained by counsel, and was fully understood. From all this we must and do conclude, notwithstanding petitioner's statement that payment of the $22,000 (or lesser amount, if the wife had remarried) was not for alimony, that it was, and was particularly so made and understood.

That the petitioner had evidence of such grounds for divorce as would preclude alimony to the wife is not controlling. The divorce

was not sought or obtained on such grounds. Moreover, we can not anticipate whether a divorce court would have believed the evidence; therefore, we can not say that alimony to the wife was impossible. It was particularly in the minds of the contracting parties, and a plain part of the consideration.

We think that we have before us here a mere agreement, within the California statute, to alter the legal relations of the parties as to property, which includes income, not essentially different from that involved in *Frances R. Walz, Administratrix*, 32 B. T. A. 718. The petitioner seeks to distinguish that case because he says therein no money was paid to the wife. This is error, since there the husband executed his promissory note, just as the petitioner here agreed to pay in the future. No real difference can be seen in the cases. Yet we held that there was "no sale or exchange of the property in question, but a division of property." Here the parties agreed that the execution of the agreement "is intended to be and is a full, complete and final adjustment and settlement of all the property interests and rights of the parties hereto." Such, and not sale, we consider the nature of the transaction to be, and consider the right to income included. In *Kaltschmidt* v. *Weber*, 79 Pac. 272, it was said that the parties to a marital community may agree that "future as well as past earnings" shall be separate property and that "the effect of such an agreement will be to convert such earnings from the status of community property to that of separate property of the wife." In *F. Eldred Boland*, 41 B. T. A. 930, an attorney and wife, a marital community in California, agreed that his earnings should be separate, and we held that the agreement served to make the husband taxable upon his earnings. Though the taxable year was several years after the agreement, earnings as an attorney may have included those from services performed prior to the agreement, and no distinction was made. Very recently in *Johnson* v. *United States*, 124 Fed. Supp. 518, the United States District Court for the Southern District of California had the present question before it, that is, whether a property settlement between husband and wife covered past earnings collected after the agreement. The Government contended, and the plaintiff conceded, that the transaction between husband and wife constituted division or partition of property, and not a sale or exchange of properties. The court held that under sections 158 and 159, California Civil Code, the agreement rendered the collections upon past earnings the sole property of the husband and that he was taxable upon the full amount thereof, no capital transaction being involved. We agree with the conclusion there set forth. Though in a sense the parties were disposing of property rights, the right received by the petitioner was merely contractual, and can not soundly

# 330

be considered to have a base, as petitioner argues, in the amount of the value of the property and money which passed to the wife, not only because the money was "as and for alimony", but because there was division, and not sale, of the community rights, with no basis, of cost or otherwise, in the contract as to the services of Bing Crosby. The right received by the petitioner was one to receive ordinary earnings, and not property acquired through capital expenditure.

We therefore conclude and hold that the petitioner received ordinary income in the entire amount of the earnings collected after February 11, 1938.

*Decision will be entered under Rule 50.*