Jean F. Stern v. Commissioner. Milton J. Stern, Deceased, Adalin Stern Wichman, Executrix v. Commissioner.
Stern v. Commissioner
Docket Nos. 31920, 31923, 31924.
United States Tax Court
T.C. Memo 1955-40; 1955 Tax Ct. Memo LEXIS 300; 14 T.C.M. (CCH) 140; T.C.M. (RIA) 55040; February 15, 1955
*300 During each of the taxable years 1943 through 1947 Dr. Milton J. Stern fraudulently understated his receipts from the practice of medicine. In addition he failed to report income from optical rebates, rent, and interest. Further, he deducted farm losses and took credit for dependents to which he was not entitled. He also falsified records in order to get long-term capital gains. Held: Respondent correctly determined Dr. Stern's taxable income for the years 1943 through 1947. Held further: A part of the deficiency determined for each of the years under review is due to fraud with intent to evade tax. William H. Beck, Esq., 612 Security Trust Building, Lexington, Ky., for the petitioners. R. G. deQuevedo, Esq., and Lyman G. Friedman, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent determined deficiencies in income and victory taxes and additions to tax because of fraud, as follows: 50%
addition
Year
Deficiency
to tax
Jean F. Stern, Docket
No. 31920
1943
$4,303.37
$2,151.69
Estate of Milton
J. Stern, Deceased,
Docket No. 31923
1943
4,303.37
2,151.69
Estate of Milton
J. Stern, Deceased,
Docket No. 31924
1944
4,675.74
2,337.87
1945
6,470.01
3,235.01
1946
6,645.70
3,322.85
1947
3,885.27
2,205.06 * *301 The duplication in deficiency and addition to tax for the year 1943 in Docket Nos. 31920 and 31923 results from the fact that separate petitions were filed from a joint statutory notice of deficiency which was addressed to both the Estate of Milton J. Stern, deceased, and Jean F. Stern, surviving wife. Certain of the adjustments made by respondent in determining the deficiencies have been conceded by petitioners. The issues in these proceedings are: 1. Whether respondent has correctly determined the taxable income of Milton J. Stern for each of the taxable years, 1943 to 1947, inclusive; and 2. Whether any part of the deficiencies is due to fraud with intent to evade tax. The cases were consolidated for hearing and opinion. Findings of Fact Some of the facts were stipulated and are so found. Others are found from the evidence. Dr. Milton J. Stern, an ophthalmologist, was born April 12, 1890 in Birmingham, Alabama. He was graduated from New York University Medical College in 1911. During the taxable years here involved, 1943 through 1947, he practiced medicine in Lexington, Kentucky. *302 He died on June 12, 1949, survived by his wife, petitioner Jean F. Stern. Milton J. and Jean F. Stern filed a joint income tax return for the year 1943. Dr. Stern filed individual returns for each of the taxable years 1944 to 1947, inclusive. He also filed an amended return in 1947. These returns were filed with the collector of internal revenue for the district of Kentucky. In each of the years under review Dr. Stern maintained office records consisting of an individual patient card for each patient, which set forth details of the treatment and also showed the payments received from the patient. In addition a day book was kept which showed the daily appointments and the amount allegedly collected from each patient. In preparing his income tax returns for the years here involved Dr. Stern included therein an amount as total receipts from the practice of medicine. This amount was arrived at by totaling the daily receipts as shown in the day book for each day of the month and then adding the monthly totals for each month of the year. Total receipts computed in this manner and reported by Dr. Stern in his returns were as follows: Year
Amount
1943
$13,324.05
1944
12,944.35
1945
13,529.50
1946
15,251.76
1947
19,049.65
The *303 monthly and annual totals of gross receipts as determined by Dr. Stern contained many mathematical errors. The day books for each of the years under review contained many alterations and obliterations of entries. Dr. Stern used a code throughout the day books to indicate the true amount of receipts. After breaking this code respondent's agents found that in all instances the coded totals were larger than the amounts used by the doctor in his monthly summaries. The revenue agents assigned to investigate Dr. Stern's returns submitted the day books to the laboratory of the Alcohol and Tobacco Tax Unit of the Bureau of Internal Revenue for chemical analysis. The results of this examination disclosed that by use of a chemical eradicator Dr. Stern had changed or entirely obliterated many entries in the day books. That the day books as altered by the doctor did not reflect the amounts actually received was verified by the examining agents by contacting patients and examining their cancelled checks or receipts. In each instance the cancelled check or receipt showed that the doctor had been paid a greater amount than he had recorded in his day book. Because Dr. Stern's day books, monthly summaries *304 and annual records did not accurately reflect his receipts from the practice of medicine, respondent's agents undertook a tabulation of the estimated ten thousand individual patient cards. This tabulation included only those receipts which were shown on the patient cards to have been received by Dr. Stern during the years 1943 to 1947, inclusive. Where a patient card had any notation casting possible doubt as to whether or not the doctor actually received the entire fee that fee was eliminated from the tabulation. The tabulation of the patient cards disclosed that Dr. Stern received in the years here involved the following amounts from the practice of medicine: Year
Amount
1943
$16,752.58
1944
17,262.66
1945
19,736.60
1946
21,457.00
1947
20,820.09
Dr. Stern fraudulently understated his total receipts from the practice of medicine for each of the taxable years under review in the following amounts: Year
Amount
1943
$3,428.53
1944
4,318.31
1945
6,207.10
1946
6,205.24
1947
1,770.44
Milton J. Stern reported in his tax returns for each of the years here involved losses from the operation of a farm. These losses were not incurred in the operation of a business or in a transaction entered into for profit. Dr. Stern *305 did not buy the farm with the expectation of making a profit from it, but for use as a home. During the taxable years here reviewed and for many years prior thereto it was the practice in Lexington, Kentucky, as elsewhere in the United States, for eye doctors to send their patients with prescriptions to optical companies for the preparation, fitting and adjustment of the glasses. The optical company would then collect a fee from the patient and pay the doctor a certain percentage thereof, called a "rebate". During the years 1943 through 1947 Dr. Stern did not report as income the rebates received by him from the Cromwell Optical Company and the American Optical Company. During each of the taxable years 1943 to 1947, inclusive, Dr. Stern fraudulently claimed as dependents his mother and sister, credit for whom he was not entitled. In his 1945 income tax return Dr. Stern reported a long-term capital gain from the sale of securities. In order to establish this gain he falsely claimed that the securities involved were purchased in May of 1945. Actually the securities were purchased on September 5, 1945 and October 19, 1945. During each of the taxable years 1946 and 1947 Milton J. Stern *306 was the owner of certain rental property, the rent (amounting to $802.55 and $544.11 for 1946 and 1947, respectively) from which was not reported by him in his tax returns for those years The property was purchased by Dr. Stern with funds from his medical practice. In 1947 Dr. Stern received but did not report dividends and interest income in the amounts of $194.05 and $112.50, respectively. The securities which produced this income were purchased chiefly from the optical rebates. Dr. Stern reported net income for the years here reviewed in the following amounts: Year
Net Income
1943
$ 6,588.35
1944
5,885.06
1945
7,550.57
1946
6,759.08
1947
10,262.56
During each of the years under review Jean F. Stern worked about two afternoons per week in her husband's office as relief for his assistant. The rebates from the Cromwell Optical Company were paid to her and those from the American Optical Company were paid to her or to third parties for her benefit. She reported the rebates from the American Optical Company in her income tax returns for 1944, 1945, 1946, and 1947. In addition she reported the aforementioned rental, dividend and interest income in the years 1946 and 1947. The correct gross and net *307 incomes for Dr. Milton J. Stern for each of the taxable years in question are as follows: Year
Gross income
Net Income
1943
$19,969.04
$17,067.55
1944
21,645.71
17,384.01
1945
32,047.61
21,604.28
1946
29,061.57
22,864.43
1947
27,265.50
20,427.35 An analysis of the bank deposits of Dr. Stern for these years disclosed that he deposited gross income in the following amounts: Gross income
Year
deposited
1943
$18,241.01
1944
21,060.01
1945
29,662.07
1946
28,107.29
1947
26,394.08
A part of the deficiency for each of the years 1943 through 1947 is due to fraud with intent to evade tax. Opinion In determining the asserted deficiencies respondent computed the income of Dr. Milton J. Stern from the practice of medicine by a tabulation of the individual patient cards after the mathematical inaccuracy of the monthly records and the falsification of the day books were discovered by the revenue agents. We do not understand petitioners to claim that the day books and monthly records are correct, but rather that respondent's method of reconstructing income is erroneous and that the proper procedure is the "increase in net worth" method. The basis of this claim is the inability of a revenue agent who prepared the tabulation to *308 identify from it a single patient card by name. There are many ways of reconstructing income when records are nonexistent or inadequate; the "increase in net worth" is but one. See Estate of George L. Cury, 23 T.C. 305 (November 23, 1954). In the instant case, however, records did exist from which respondent was able to determine the medical income. We find nothing wrong with his computation. The "error" urged by petitioners is easily explained by the method itself. Respondent's agents tabulated the patient cards by copying from them only the date and amount paid to Dr. Stern, excluding any fees where doubt as to their collection existed. It was no more necessary in arriving at a correct determination of this income to copy the patients' names than it was to copy the details of the treatment. There is no evidence that the patient cards are incorrect or that the amounts as determined by respondent are erroneous. It was incumbent on petitioners to present such evidence if we were to sustain their contention. Gibbs Instrument Co., 1 B.T.A. 278; Joseph V. Moriarty, 18 T.C. 327, affd. 208 Fed. (2d) 43. Accordingly, we have found and now so hold that Dr. Stern received income from *309 the practice of medicine in 1943, 1944, 1945, 1946, and 1947 in the following amounts: $16,752.58; $17,262.66; $19,736.60; $21,457.00; and $20,820.09, respectively. In addition to recomputing the receipts from the medical practice, respondent made other adjustments to the net income of Dr. Stern, the amounts of which are not in dispute. Petitioners claim, however, that all items adjusted by respondent are properly the income of Jean F. Stern. During the taxable years under review Dr. Stern received but did not report as income optical rebates from the Cromwell Optical Company and the American Optical Company. By stipulation petitioners have agreed that the portions of these rebates paid by the Cromwell Optical Company and in 1943 by the American Optical Company are properly income to Dr. Stern. Petitioners contend, however, that the rebates paid by the American Optical Company in the years 1944 through 1947, inclusive, are the income of Jean F. Stern. The rebates paid by the American Optical Company, as well as those paid by the Cromwell Optical Company, flowed to Dr. Stern as a result of his professional activities. Applying the principles of Helvering v. Horst, 311 U.S. 112, we *310 hold that these payments are income to him within the provision of section 22(a), Internal Revenue Code of 1939. The right of the doctor to take deductions for the losses from the operation of the farm under section 23(e), [1] Internal Revenue Code of 1939, hinges on the question whether he was engaged in farming as a business, with the expectation of making a profit, or for recreation or pleasure. The farm in question was used as the dwelling place *311 of Dr. Stern and his wife, Jean. There is no evidence that this farm was operated in a businesslike manner. We have found that it was purchased with no expectation of making gain but for use as a home. It is our opinion that the farming activities as were carried on in conjunction with this property were incidental to the residential purpose that motivated its purchase, and that the losses therefrom are personal expenses and are not deductible under section 23(e). John Randolph Hopkins, 15 T.C. 160; Samuel Riker, Jr., Executor, 6 B.T.A. 890. We think that the rent reported by Jean F. Stern in her individual tax returns for the years 1946 and 1947 was the income of Dr. Stern and should have been reported by him. The property which produced this rent was purchased with his funds. Only if income-producing property is transferred by valid gift is the donee taxable on the income derived. See Carl G. Dreymann, 11 T.C. 153. The essential elements of a bona fide gift are not present in the record. Adolph Weil, 31 B.T.A. 899, affd. 82 Fed. (2d) 561, certiorari denied 299 U.S. 552. Likewise it is our opinion that the dividends and interest realized by Dr. Stern in 1947 were his taxable *312 income and not that of his wife. In addition to the deficiencies asserted, respondent has imposed the 50 per cent addition to tax required by section 293(b) [2] of the 1939 Code. Unlike a deficiency claim where his determination has prima facie validity, respondent has the burden of proving the fraud. A. W. Mellon, 36 B.T.A. 977. There is no question but that this burden has been sustained in the instant proceedings.
The record does not disclose isolated instances of insignificant omissions or occasional discrepancies, but rather a wholesale scheme of fabrication, misstatement, misrepresentation, perversion, and falsification to cheat the Government out of its lawfully due revenue. That Dr. Stern committed acts with the purpose of evading taxes for the years here involved has been proven by clear and convincing evidence. Accordingly, *313 the assessment of additional taxes for each of the years 1943 through 1947 is not barred by the statute of limitations. [3] In making our determination it was only necessary to find a part of the deficiency in each year due to fraud. Maitland A. Wilson, 7 T.C. 395; Arlette Coat Co., 14 T.C. 751. We hold, therefore, that petitioners are liable for the deficiencies and additions to tax imposed for each of the years 1943 through 1947. Decisions will be entered for the respondent Footnotes
*. Based on the deficiency (amounting to $4,410.11) determined before consideration of the amended return for 1947.
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or (3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return.↩
2. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩
3. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.↩