Tommie L. Merritt v. Commissioner.
Merritt v. Commissioner
Docket No. 94474.
United States Tax Court
T.C. Memo 1964-164; 1964 Tax Ct. Memo LEXIS 172; 23 T.C.M. (CCH) 960; T.C.M. (RIA) 64164; June 11, 1964
John Hampton Stennis, 1347 Deposit Guaranty Bank Bldg., Jackson, Miss., for the petitioner. Robert G. Faircloth, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in petitioner's income tax for the year 1957 of $9,234.03. The sole remaining issue is whether petitioner received, and failed to pay tax upon interest income of $20,873.35 in the year in issue. Petitioner argues as an alternative that assuming *173 the receipt of such interest, she is entitled to a deduction of a like amount as interest paid under section 163(a)[1] in discharge of her individual liability as executrix, legatee, devisee and transferee of her deceased husband. All of the facts have been stipulated and are so found. Petitioner (sometimes hereinafter called Tommie) is an individual residing in Hattiesburg, Mississippi. Her income tax return for the year in issue was filed with the district director of internal revenue, Jackson, Mississippi. Petitioner's husband, Russell L. Merritt (hereinafter called Russell), died in 1951. For the years 1940 to 1945, inclusive, and for 1947, petitioner and Russell had filed separate income tax returns, apparently on the theory that petitioner and Russell were co-owners or partners as to the various loan businesses which generated the income in question. Russell died testate. His will which was admitted to probate in Forrest County, Mississippi, named petitioner as executrix and she was also the sole legatee and devisee. Letters were issued to petitioner on May 16, 1952. On April 9, 1954, the Commissioner issued *174 a statutory deficiency notice to Tommie as executrix of Russell's estate, determining that there should be included in Russell's income the amounts reported by Tommie on her separate returns for 1940 through 1945 and for 1947. This determination was assigned as error by a petition to this Court filed on June 30, 1954, Docket No. 53726. On April 15, 1954, Tommie received a notice of over-assessment as to her individual income tax liabilities for the years and in amounts as follows: 1940
$ 149.91
1941
4,192.20
1943
9,672.93
1944
8,017.30
1945
4,584.72
1947
471.97 Tommie continued to claim that she was the true owner of the income as shown on her separate returns for those years, but nevertheless she filed protective claims for refund as to them. On June 23, 1954, the Commissioner issued a statutory deficiency notice to Tommie individually determining income tax deficiencies totaling $1,200.70 for the years 1941, 1943, 1944 and 1945, and she assigned the determinations for all such years save 1941 as error by petition filed in this Court on September 18, 1954, Docket No. 54812. The above cases and claims for refund were all finally disposed of *175 on the basis of a proposal of settlement made by the Commissioner on January 30, 1957. The Tax Court cases were settled by stipulations filed with the Court on April 14, 1957, and it is stipulated: During the year 1957, the said overassessments totaling $27,089.03, plus interest thereon in the amount of $20,873.35, a total of $47,962.38, were credited to the tax liability of the Estate of Russell L. Merritt, Deceased, with respect to the taxable years 1940, 1941, 1943, 1944, 1945, and 1947, [2] * * *. In connection with the above settlement, Tommie executed a waiver with respect to overassessment (form 870AD) which contained an agreement, reading in pertinent part: The undersigned taxpayer also consents and agrees to the application of so much of the overassessment, as represents an overpayment, as a credit to the deficiency in tax due from Mrs. Tommie L. Merritt, Executrix, Estate of Russell L. Merritt, Deceased, in the amounts of * * * for the years 1940, 1941, 1943, 1944, 1945, and 1947 respectively, aggregating $55,595.27; * * *. [Signed] Tommie L. Merritt. (Taxpayer). Also in connection with the above settlement, Tommie, *176 acting individually and also in her representative capacity as executrix, executed a "Collateral Agreement," in words and figures as follows: COLLATERAL AGREEMENT In re: Tommie L. Merritt Hattiesburg, Mississippi
WHEREAS, the undersigned, the petitioner in appeal bearing Docket No. 54812, in the Tax Court of the United States, and the Commissioner of Internal Revenue have agreed to the settlement of that proceeding by the filing of a stipulation of settlement setting forth that there are overpayments due to the said petitioner for the taxable years 1943, 1944 and 1945 in the respective amounts of $9,672.93, $8,017.30 and $4,584.12; and WHEREAS, the undersigned, the petitioner, in her capacity as executrix of the Estate of Russell L. Merritt, Deceased, in appeal bearing Docket No. 53726, in the Tax Court of the United States, and the Commissioner of Internal Revenue have agreed to the settlement of that proceeding by the filing of a stipulation of settlement, setting forth that there are deficiencies in income taxes and no additions to the tax under section 293(b) of the Internal Revenue Code of 1939 due from the said petitioner for the taxable years 1940 *177 to 1945, inclusive, and 1947, as follows: Sec. 293(b)
Year
Deficiency
I.R.C. 1939
1940
$ 344.45
None
1941
9,575.13
None
1942
None
None
1943
17,056.76
None
1944
13,920.00
None
1945
8,531.53
None
1947
6,167.40
None
AND, WHEREAS, the undersigned is executrix of the estate of her deceased husband, Russell L. Merritt, and a beneficiary under his will; NOW, THEREFORE, in consideration of the agreement of the Commissioner of Internal Revenue to close the appeal bearing Docket No. 54812, involving the taxable years 1943, 1944 and 1945 before the Tax Court of the United States, by the filing of a stipulation of settlement wherein it is set forth that there are overpayments due to said petitioner for the taxable years 1943, 1944 and 1945 in the aggregate amount of $22,274.35, and in further consideration of the agreement of the Commissioner of Internal Revenue to close the appeal bearing Docket No. 53726, involving the taxable years 1940 to 1945, inclusive, and 1947, before the Tax Court of the United States, by the filing of a stipulation of settlement wherein it is set forth, among other things, that there are no additions to *178 the tax under section 293(b) of the Internal Revenue Code of 1939 due from the Estate of Russell L. Merritt, Deceased, Tommie L. Merritt, Executrix, for the taxable years 1940 to 1945, inclusive, and 1947, the undersigned consents and agrees to the application of the aforesaid overpayments due to her for the taxable years 1943 to 1945, plus statutory interest thereon, as a credit to the deficiencies in income taxes due from the Estate of Russell L. Merritt, Deceased, Tommie L. Merritt, Executrix, in the amounts of $344.45, $9,575.13, $17,056.76, $13,920.00, $8,531.53 and $6,167.40 for the years 1940, 1941, 1943, 1944, 1945 and 1947, respectively, aggregating $55,595.27, plus statutory interest thereon. /s/ Mrs. Tommie L. Merritt Mrs. Tommie L. Merritt In this case petitioner and her late husband saw fit to file individual income tax returns for certain years during the 1940's on the theory that they were co-owners of the businesses which were generating income, or at least that they were partners in such businesses. It has been respondent's position from the start that they were neither co-owners nor partners but that the businesses and the income therefrom *179 were owned solely by Russell; that said income should have been returned by Russell alone and that such action would have resulted in substantial increases in the income tax payable upon such income over and above that which was paid under the income splitting device which Tommie and Russell employed. Petitioner's main arguments in this case lean heavily upon the proposition that the settlements arrived at in 1957 were mere "bookkeeping devices" rather than transfers of actual cash or checks, and that the Government should not seek to attach the label "interest" to any of these book entries since the money had always been in the Treasury of the United States in any event. This approach has two fundamental defects. First, it was the voluntary action of Tommie and Russell in the 1940's which gave rise to the two accounts (rather than one) on the Commissioner's books and required him to deal with two taxpayers rather than one. Obviously, Tommie cannot disavow such duality merely because that now suits her purposes. Second, petitioner's approach ignores the fact that since the filing of the individual returns in the 1940's she and Russell have had the use of the money difference between *180 the taxes she and Russell paid and the taxes which would have been payable had Russell alone returned the income and that, conversely, the Treasury has been denied the use of such difference. Respondent does not deny that petitioner received no actual cash in 1957 in connection with the settlements, but argues that she constructively received interest income in such year in the amount of $20,873.35 when that amount of interest on the overassessments due her was applied, pursuant to her agreement, against the tax liabilities of Russell's estate. Petitioner specifically recognizes the correctness of I.T. 2210, IV-2 C.B. 43, which provides that interest on refunds paid under the Revenue Act are taxable, and of Rev. Rul. 57-481, 1957-2 C.B. 48, which provides in pertinent part: Accordingly, where a taxpayer pays the deficiency (including interest) of another person by having the amount thereof offset against his overassessment for a taxable year, the net overassessment (plus interest) being remitted to the taxpayer, the taxpayer must report as income the amount of interest on the total overassessment, * * *. The interest on the deficiency may be deducted, * * * only *181 from the gross income of the taxpayer whose liability such payment represents irrespective of whether made on his behalf as a loan or as a gift to him. Petitioner also specifically agrees with the reasoning of the Supreme Court in Helvering v. Horst, 311 U.S. 112, but argues that none of the above principles are applicable to the facts of the instant case. Petitioner's various arguments are a little hard to follow, but we believe they can be fairly summarized as follows: On April 9, 1954, the respondent asserted his claimed deficiencies against Russell's estate. On April 15, 1954, petitioner individually received notice of overassessment as to 6 years in the 1940's, and shortly thereafter filed claims for refund. Just over 2 months later and on June 23, 1954, the Commissioner issued a statutory deficiency notice to her individually as to all of the years involved save the first and the last, which 2 years included a very small portion of the total refund claimed. These 3 matters were negotiated simultaneously, and settlement was not ultimately arrived at until about 3 years later. Petitioner concludes from the above that the refunds (and the interest thereon): *182 Were not subject to her unfettered command; She never had an unconditional present right to receive them and could not have received them; Receipt (of the refunds and interest) was subject to substantial limitations and restrictions; She had no control over the time or manner of payment; She did not fully enjoy the benefit of the economic gain represented by the right to receive income and was at best a mere conduit; and The "payment" of the refunds and interest by the Government in this case was a mere bookkeeping device with entries on its own books. Petitioner seems to assign some sinister motive to the fact that on June 23, 1954, statutory deficiency notice was issued as to her individually for the years 1941, 1943, 1944, and 1945, and would have us infer that the Commissioner's sole purpose for such action was to delay the processing of her individual claims for refund in order to force her, as executrix, to negotiate as to the tax liabilities of Russell's estate. However, the record is entirely silent as to any of the details or items encompassed within such statutory deficiency notice and we cannot conclude that they were sinister or unwarranted simply because *183 they were issued 2 months after her claims for refund were filed and were not settled until 3 years later and at the same time that the claimed tax deficiencies of Russell's estate were settled. Petitioner relies heavily upon the fact that her individual claims for refund, the asserted deficiencies against her individually and the asserted deficiencies against Russell's estate were all negotiated simultaneously and were all settled at the same time. Petitioner overlooks or ignores the fact that during all of the above negotiations she, in each of her capacities, was contending that a part of the income generated by her husband's loan businesses during the 1940's was in fact hers and had been correctly included on her and Russell's individual returns. She criticizes the Commissioner for not having acted quickly and independently on her claims for refund, filed April 15, 1954, yet in the same breath states that they were purely "protective in nature to prevent the running of the statute of limitations." It is obvious that if petitioner's basic position had been the correct one then she and Russell's returns in the 1940's would have been correct as filed and no deficiencies would *184 have been due from Russell's estate nor any refunds due to petitioner. In Helvering v. Horst, supra, the Supreme Court said: From the beginning the revenue laws have been interpreted as defining "realization" of income as the taxable event rather than the acquisition of the right to receive it. And "realization" is not deemed to occur until the income is paid. But the decisions and regulations have consistently recognized that receipt in cash or property is not the only characteristic of realization of income to a taxpayer on the cash receipts basis. Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him. * * *
The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it. * * *
The tax * * * upon income "derived from * * * interest * * *" therefore cannot fairly be interpreted as not applying to income derived from interest * * * when he who is entitled *185 to receive it makes use of his power to dispose of it in procuring satisfactions which he would otherwise procure only by the use of the money when received. We believe that petitioner's use of the interest on her overassessments in this case in the amount of $20,873.35 falls squarely within these principles and is taxable to her in 1957. She has made no factual showing as to limitations or restrictions upon her right to receive this interest other than those discussed above, which are deemed insufficient to distinguish this case. As to petitioner's contention that she was a mere conduit for the benefit of Russell's estate in so far as this interest was concerned, petitioner argues that any refund received by her was in fact an asset of the estate and available for the payment of income tax deficiencies due from the estate. Petitioner thus seeks to blow both hot and cold, for this conduit or agency theory seeks to ignore the validity of the separate returns which were filed by petitioner and Russell during the 1940's, and if carried to its logical conclusion would result simply in a deficiency owing by Russell's estate and no refunds or interest thereon owing to Tommie individually. *186 Petitioner's alternative argument is that assuming she received interest in 1957, she is nevertheless entitled to a deduction for interest paid under section 163(a). As noted above, petitioner specifically recognizes the correctness of Rev. Rul. 57-481, supra, which provides that: [Interest] on the deficiency may be deducted * * * only from the gross income of the taxpayer whose liability such payment represents * * *, but seeks to bring herself within its definition by arguing that in discharging the tax liabilities and interest [3] asserted against Russell's estate she was discharging her individual liability as transferee of all of his property and estate. On her 1957 return she had showed this item as $20,873.35, "Paid by me individually to avoid transferee Liability." Section 6901(a)(1)(A) of the Internal Revenue Code provides: The amounts of the following liabilities shall, * * * be assessed, paid, and collected * * * (1) Income, * * * Taxes. *187 - (A) Transferees. - The liability, at law or in equity, of a transferee of property - * * * and the parties agree that a transferee may deduct that part of an income tax deficiency (and interest thereon) which accrues after the transfer of the property to which the tax relates. But there is no evidence in this record of any transfer to petitioner. It is true that she was executrix of Russell's estate and the sole legatee and devisee under his will, but that is not sufficient to show any transfer. Russell could have died with little property, or many creditors whose claims would have taken precedence over any distributions. Petitioner has failed her burden of proving herself a transferee. Decision will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. Such liabilities aggregated $55,595.27.↩
3. The record is unclear as to the amount of interest which may have been paid on the estate's deficiencies by the 1957 settlement, but that is unimportant in view of our holding.↩