Davis E. Keeler and Margaret Keeler v. Commissioner.
Keeler v. Commissioner
Docket No. 1096-70.
United States Tax Court
T.C. Memo 1971-214; 1971 Tax Ct. Memo LEXIS 119; 30 T.C.M. (CCH) 876; T.C.M. (RIA) 71214; August 25, 1971, Filed *119 Davis E. Keeler, pro se, R.R. #1, Box 531-A, Cary, Ill.Lewis M. Porter, Jr., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1966 in the amount of $563. The issue for decision is whether sums paid by Americans Building Constitutionally (ABC), a trust, for services rendered are income of Raintree Foundation or are includable in petitioner's gross income for the calendar year 1966. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, Davis E. and Margaret Keeler, are husband and wife who, at the time of the filing of the petition herein, resided in Cary, Illinois. They filed a joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Springfield, Illinois. Davis E. Keeler (hereinafter referred to as petitioner), is an attorney, having graduated from Northwestern University School of Law in 1966 and been admitted to the Illinois bar in November of that year. On July 29, 1966, petitioner, together with Richard J. Stephenson and James R. Walsh, incorporated *120 the Raintree Foundation (hereinafter referred to as Raintree) [1] under the provisions of the Illinois General Not for Profit Corporation Act. During the year 1966, Raintree had three directors: Davis E. Keeler (petitioner), his wife, Margaret Keeler, and Richard J. Stephenson (hereinafter referred to as Stephenson). No shares or membership certificates in Raintree were ever issued. Petitioner and Stephenson were classmates in law school and had been friends since their first year in law school. Stephenson, James R. Walsh, and petitioner, the incorporators of Raintree, were also involved in the organization in June or early July 1966 of Americans Building Constitutionally, a trust (hereinafter *121 referred to as ABC), located in Barrington, Illinois. On September 8, 1966, ABC sent a letter to Raintree in which it solicited the creation of an educational program and offered to remunerate Raintree with a monthly stipend of $1,000 per month. The text of the letter which was signed on behalf of ABC by Richard J. Stephenson, Trustee, was as follows: Americans Building Constitutionally (a Trust) is a private, non-profit educational institution dedicated to helping the citizens of the United States make full use of those rights guaranteed them under the Constitution. In furtherance of that purpose, Americans Building Constitutionally (a Trust) desires to offer an educational program to the people of this country which can show them how to benefit themselves and make a meaningful social contribution through the device of private philanthropy. Now therefore I am authorized to offer to the Raintree Foundation a contract under which the Raintree Foundation shall supply to Americans Building Constitutionally (a Trust) the expertise available to it in the research of one or more educational programs effectuating the aims and goals of Americans Building Constitutionally (a Trust). *122 In return for the satisfactory performance of this work, ABC will pay 877 the Raintree Foundation under this contract the sum of One Thousand dollars per month. It is agreed that all the materials developed under this contract shall be and remain in the public domain. No written contract supplementing the letter offer was entered into by the parties. However, petitioner verbally agreed with the trustees of ABC to perform the services requested. Pursuant to the verbal arrangement with the trustees of ABC, petitioner worked on the development of course material subsequently used by ABC during the year 1966. The research and course materials developed by petitioner resulted in a volume containing four separate lectures. These lectures dealt generally with methods by which a person of sufficient means might establish a private foundation and use funds of that foundation for "fringe" benefits for himself and his family without incurring income tax on the amounts so used. These materials were used by ABC to conduct courses of instruction for their membership. ABC had at least 50 but not more than 250 members in 1966. The amount each member paid to ABC varied with the course of *123 lectures that member pursued. The minimum payment of a member was $1,000. During 1966, ABC paid $2,000 to Raintree for the course materials provided and this amount was deposited in a bank account in the name of Raintree. No checks were drawn in 1966 on the Raintree account. Petitioner was the managing director of Raintree. The board of directors of Raintree exercised no control over petitioner with respect to his hours or his performance of services in developing the course material for ABC. Petitioner is the only person who ever performed services for or in the name of Raintree. No salary was paid to petitioner for the services he performed. Raintree has never paid any salaries or director's fees to anyone at any time. The only other activity conducted in the name of Raintree in 1966 was a plan written by petitioner for a half-hour film on private philanthropy entitled, "The Small Foundation." Petitioner prepared the plan hoping that he could find someone to put up money for the film but no one ever did put up the money to finance the project, which for that reason did not progress beyond the planning stage. Raintree received no payments in 1966 other than the $2,000 it *124 received from ABC and incurred no expenses in 1966. In 1967 or 1968 Raintree purchased and gave away some books. In 1967 it purchased some office supplies and an automobile and in that year petitioner drew some expense money from Raintree. During the year 1966, Raintree had only one meeting, its organizational meeting, at which time the letter offer from ABC was presented and petitioner's verbal agreement to perform the work was ratified. Raintree's corporate minutes were kept irregularly, but at least once a year. Since 1968, Raintree has engaged in no activities and has existed as a mere corporate shell. No application for exemption from Federal income tax was ever filed by Raintree with the Internal Revenue Service. No returns were filed by Raintree until sometime late in 1968, when, after respondent's agent commenced an audit of petitioner's returns, Raintree filed form 990A returns for an organization exempt from Federal income tax. Respondent in his notice of deficiency increased the income reported by petitioner by $2,000 with the explanation that the $2,000 paid by ABC to Raintree as compensation for services performed by petitioner was earned by petitioner and includable *125 in his gross income. Ultimate Finding of Fact The sums paid by ABC to Raintree are includable in petitioner's gross income since petitioner rendered the personal services which earned the sums in his capacity as an individual and not as an employee of Raintree. Opinion Section 61, [2] I.R.C. 1954, provides for the inclusion in a taxpayer's gross income of "all income from whatever source derived" including "compensation for services, including fees, commissions, and similar items." 878 It is well established that compensation for personal services of the taxpayer constitutes an item of gross income which cannot effectively be assigned to escape the burden of taxation. Lucas v. Earl, 281 U.S. 111 (1930); Helvering v. Horst, 311 U.S. 112 (1940); and Commissioner v. P.G. Lake, Inc., 356 U.S. 260 (1958). As announced in Lucas v. Earl, supra, the "fruit" may not be "attributed to a different tree from that on which it grew." It is likewise well established that a viable corporation is a separate entity from its officers or stockholders and income actually earned by a corporation is taxable to that corporation even though *126 the corporation acts only through its officers and employees.
Our question here therefore is whether Raintree as a corporate entity or petitioner as an individual earned the $2,000 paid by ABC. As stated in Jerome J. Roubik, 53 T.C. 365, 379 (1969): In the case of a corporation which provides personal services for a fee, income is "earned" by the corporation or by the person who actually performs the services, whoever has the "ultimate direction and control over the earning of * * * [the] compensation." Richard Rubin, 51 T.C. 251, 265-266 (1968), citing Lyon & Eustice, "Assignment of Income: Fruit and Tree as Irrigated by the P.G. Lake Case," 17 Tax L. Rev. 393 (1962). Petitioner contends that there was a valid employment relationship between Raintree and himself, and that no such employment relationship existed between him and *127 ABC. In addition, petitioner contends that there was a contractual relationship between ABC and Raintree under which the latter would research an educational program. In our view the record before us does not support petitioner's contentions. Raintree was a passive entity which exercised no control over petitioner, which paid no salary or compensation to petitioner, and which lacked any substantive manifestation of an employment relationship with petitioner. Raintree exercised no control over the services performed by petitioner and the compensation for those services was paid to Raintree only in form. The letter offer from ABC to Raintree was never formalized into a binding contract, but rather was merely followed by the independent performance and delivery by petitioner of the services requested. The bank account of Raintree was under petitioner's control. Raintree performed no meaningful business function and is not entitled to recognition as a separate entity for Federal tax purposes. Based upon the facts in the record before us, we conclude that petitioner had the ultimate direction and control over the services rendered to ABC and the compensation generated therefrom. He *128 therefore is taxable on the amounts of compensation for his personal services notwithstanding the fact that he had the payment for his services made to Raintree. Lucas v. Earl, supra.
Decision will be entered for respondent. Footnotes
1. The stated purposes of Raintree, as provided in its Articles of Incorporation, are: The purposes of this foundation shall be to pursue research, development, and education to advance the good of mankind throughout the world, including, but not limited to, study, development, and dissemination of the means whereby individuals and groups may work singlely [sic] and collectively, without coersion, [sic] to secure the peace, ease the burdens, and increase the fruitfulness of mankind.↩
2. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items: * * *↩